# IN THE SUPREME COURT OF TEXAS

═══════════

No. 16-0328

═══════════

AMANDA BRADSHAW, PETITIONER,

v.

BARNEY SAMUEL BRADSHAW, RESPONDENT

═══════════

ON PETITION FOR REVIEW FROM THE
COURT OF APPEALS FOR THE SIXTH DISTRICT OF TEXAS

═══════════

JUSTICE BOYD, joined by JUSTICE GREEN, JUSTICE JOHNSON, and JUSTICE LEHRMANN, dissenting.

Five members of the Court agree to reverse the trial court's judgment in this divorce case, but they do not agree on any proper ground for reversal. Three Justices would reverse because, in their view, the trial court's property division is "unjust and wrong" as a matter of law. *Ante* at ___ (HECHT, C.J., plurality op.). Two Justices would reverse because, in their view, no evidence supports the trial court's judgment. *Ante* at ___ (DEVINE, J., concurring). We dissenting Justices would affirm the trial court's judgment because the applicable standard of review and our well-established preservation-of-error requirements permit no other option. Applying the governing standard of review and addressing the issues the parties actually raise, we must agree with the court of appeals' decision affirming the trial court's judgment. Because the Court reverses, we dissent.

# I.
## Just and Right Division

Amanda Bradshaw filed this suit to divorce Barney Bradshaw after he was arrested for sexually assaulting Amanda's daughter in the home they shared on Florey Lake Road. After four separate hearings, the trial court entered a final divorce decree dissolving the marriage "on the ground of cruel treatment," finding the Florey Lake house to be community property, and disproportionately awarding Amanda eighty percent of the interest in the home. The court also awarded each party the personal property in their respective possession or control, but Barney was in prison and so possessed none of that property. The court of appeals affirmed. *In re Marriage of Bradshaw*, 487 S.W.3d 306, 312 (Tex. App.—Texarkana 2016).

Amanda presents a forceful argument that the trial court's decision to award Barney any interest in the Florey Lake house "is manifestly unfair and unjust" because it creates a "windfall for the spouse at fault and a continuing stigmata on his blended family." "To award [Barney] any interest in the home (a crime scene) where the victims of his crimes now reside," she contends, "is simply an abuse of discretion." The CHIEF JUSTICE agrees, but his plurality opinion misapplies the abuse-of-discretion standard.

The Texas Family Code requires trial courts hearing divorce cases to "order a division of the estate of the parties in a manner that the court deems just and right, having due regard for the rights of each party and any children of the marriage." TEX. FAM. CODE § 7.001. This provision "affords the trial court wide latitude and discretion in dividing the community estate of the parties upon dissolution of their marriage." *Vallone v. Vallone*, 644 S.W.2d 455, 460 (Tex. 1982) (citing

2

*Eggemeyer v. Eggemeyer*, 554 S.W.2d 137, 142 (Tex. 1977); *McKnight v. McKnight*, 543 S.W.2d 863, 866 (Tex. 1976)). Appellate courts must "presume that the trial court exercised its discretion properly" and may reverse the trial court only if "a clear abuse has been shown." *Id.* (citing *Murff v. Murff*, 615 S.W.2d 696, 699 (Tex. 1981)). We have found an abuse of discretion only when the trial court ignores a governing legal standard.[1]

Agreeing with Amanda, the Court's plurality would hold that it is not "just and right, as a matter of law, in dividing a community estate in divorce, to award an interest in the family home to a spouse convicted of using the home to sexually abuse his stepdaughter." *Ante* at ___ (HECHT, C.J., plurality op.). But this Court's view of what is "just and right" is irrelevant to the issue before us. The Family Code "clearly vests discretion *in the trial court* in determining the proper division of the community estate of the parties." *Carle v. Carle*, 234 S.W.2d 1002, 1005 (Tex. 1950) (emphasis added). Under the Code, the trial court "was empowered, in pronouncing the decree of divorce, to order a division of the estate of the parties to the divorce suit in such way as *to the court* seemed just and right." *Hedtke v. Hedtke*, 248 S.W. 21, 22 (Tex. 1923) (emphasis added). In exercising that discretion, the trial court "can be controlled by what the facts may lead *him* to believe is just and right." *Ex parte Scott*, 123 S.W.2d 306, 313 (Tex. 1939) (emphasis added).

---

[1] *See, e.g.*, *Young v. Young*, 609 S.W.2d 758, 762 (Tex. 1980) (explaining an abuse of discretion would occur if the trial court disproportionately awards community property as "a punishment for the spouse at fault" instead of as a just and right "division" of the community estate); *Eggemeyer*, 554 S.W.2d at 142 (finding abuse of discretion when trial court's division assigned one spouse's separate property to the other spouse); *Cockerham v. Cockerham*, 527 S.W.2d 162, 173 (Tex. 1975) (finding abuse of discretion when trial court ignored jury findings that "extend to issues of fact from which the status of property is determined") (citing *Stafford v. Stafford*, 41 Tex. 111, 118–19 (1874); *Rice v. Rice*, 21 Tex. 58, 66 (1858); *Baker v. Baker*, 104 S.W.2d 531, 532 (Tex. Civ. App.—San Antonio 1936, no writ)); *Craig v. Craig*, 31 Tex. 203, 204 (1868) (finding abuse of discretion when trial court's property division divested one party of "all his property").

The plurality suggests that its view can trump the trial court's discretion despite the abuse-of-discretion standard because, when "finally interpreting a statute, this Court's view is all that is relevant." *Ante* at ___ (HECHT, C.J., plurality op.). But we are not interpreting a statute here. No one disputes the meaning of the statute's terms, and no one disputes that the statute requires trial courts to divide the parties' property in a lawful, equitable, and proper manner under law, morality, or ethics. *Ante* at ___ (HECHT, C.J., plurality op.). The issue here is the statute's *application*, not its meaning, and the plurality concludes that the trial court misapplied the statute, not that it misinterpreted it. As we have repeatedly recognized, the statute grants the trial court—not this Court—"broad discretion" in determining how the statute applies to particular facts. *Young*, 609 S.W.2d at 762. As an appellate court, our role "in reviewing cases where property is divided in a divorce action is to determine only if there is an abuse of discretion." *McKnight*, 543 S.W.2d at 866. In short, the issue before this Court "is not whether we agree with the [division] imposed by the trial court, but whether we can say that the trial court exceeded its discretion." *Plorin v. Bedrock Found. & House Leveling Co.*, 755 S.W.2d 490, 491 (Tex. App.—Dallas 1988, writ denied) (addressing sanctions order).

Even the plurality cannot say that the trial court acted in this case "in an arbitrary or unreasonable manner without reference to any guiding rules or principles." *Walker v. Gutierrez*, 111 S.W.3d 56, 62 (Tex. 2003). Instead, it simply declares that any view other than its own is against the law. Noting that a trial court "has no discretion in determining what the law is or applying the law to the facts," *ante* at ___ (HECHT, C.J., plurality op.) (quoting *In re State Farm Lloyds*, 520 S.W.3d 595, 604 (Tex. 2017)), it declares that the trial court's decision in this case "is

4

unjust and wrong, not as a matter of fact, but as a matter of law." *Ante* at ___ (HECHT, C.J., plurality op.). By declaring in hindsight that the law prohibits the trial court's decision, it attempts to create an abuse of discretion.

The plurality's logic contains several fatal flaws. First, when a statute authorizes the trial court to make a discretionary determination by applying equitable standards like "just and right," appellate courts cannot restrict that discretion by declaring that a particular application is or is not just and right. *McKnight*, 543 S.W.2d at 866. "Matters of equity" and "the responsibility for just decisions" are "addressed to the trial court's discretion." *Bocquet v. Herring*, 972 S.W.2d 19, 21 (Tex. 1998). By declaring as a matter of law that "the trial court's division of the home in this case is neither just nor right," *ante* at ___ (HECHT, C.J., plurality op.), the plurality is impermissibly "substituting [its] determination of 'just and right' for the trial court's determination," and thus "infringing upon the trial court's discretion." *McKnight*, 543 S.W.2d at 866.

Second, the plurality's new "law" is manifestly unworkable as a legal principle. As if enacting a statute, the plurality would declare that it is not "just and right, as a matter of law, in dividing a community estate in divorce, to award an interest in the family home to a spouse convicted of using the home to sexually abuse his stepdaughter." *Ante* at ___ (HECHT, C.J., plurality op.). But it would limit the new law "to narrow circumstances where the behavior involves the use of community property, is as egregious as Barney's, and results in a criminal conviction." *Ante* at ___ (HECHT, C.J., plurality op.). And the spouse who is precluded from receiving any interest must have "abused his stepdaughters and others repeatedly over a protracted period, [must have] used the family home to commit all of the abuse, and [must have been]

5

convicted and severely sentenced for the continuous sexual abuse of a child under the age of 14." *Ante* at ___ (HECHT, C.J., plurality op.). But does this new law apply only if the abuse involves a home, or can it involve a vehicle or some other community property? And must it involve sexual abuse, or would egregious physical or emotional abuse suffice? Must the abuse involve a child or step-child, or would the new law apply to abuse against the spouse? And what if the abuser has not yet been convicted at the time of the divorce, or the conviction remains on appeal or subject to habeas relief? The plurality announces not a legal principle but the result of its own application of the equitable "just and right" standard to the facts of this particular case.

Third, even if the Court adopted the plurality's view as a new generally applicable legal principle, it would not apply retroactively to render the trial court's decision an abuse of discretion in this case. A "lower court ordinarily should not be said to have abused its discretion in following existing law, even if that law is no longer valid or should be significantly changed." *In re Smith Barney, Inc.*, 975 S.W.2d 593, 599 (Tex. 1998).

Finally, and most importantly, the plurality's pronouncement is not the law even after today's decision. The plurality asserts that its position is "virtually beyond argument," *ante* at ___ (HECHT, C.J., plurality op.), but six Justices disagree. Failing to carry the Court's majority, the new principle the plurality announces is not the law, so the trial court could not have abused its discretion by ignoring or failing to apply what was not, and is still not, the law.

All of this is not to say that we agree with the trial court's decision. To be sure, Barney's cruelty and the harm he inflicted on Amanda and her daughters are indisputably abhorrent and

intolerable in any civilized society.[2] A sixty-year prison sentence hardly seems sufficient. But unlike this Court, the

> trial court in a divorce case has the opportunity to observe the parties on the witness stand, determine their credibility, evaluate their needs and potentials, both social and economic. As the trier of fact, the court is empowered to use its legal knowledge and its human understanding and experience. Although many divorce cases have similarities, no two of them are exactly alike. Mathematical precision in dividing property in a divorce is usually not possible. Wide latitude and discretion rests in these trial courts and that discretion should only be disturbed in the case of clear abuse.

*Murff*, 615 S.W.2d at 700. Here, the trial court conducted four hearings, reviewed all the testimony and other evidence, considered Barney's abusive conduct, and granted Amanda's divorce petition on the ground of Barney's "cruel treatment" of Amanda. *See* TEX. FAM. CODE § 6.002 (authorizing fault-based divorce when one spouse "is guilty of cruel treatment toward the complaining spouse of a nature that renders further living together insupportable"). Although Amanda and Barney each owned a fifty-percent interest in the Florey Lake house, the court disproportionately awarded eighty percent of the interest to Amanda and twenty percent to Barney. Having observed the testimony and considered all the evidence, the court expressly found that this uneven division reflected "due regard for the rights of each party." *Id.* § 7.001.

Regardless of how we might have awarded the interests, the trial court did not act arbitrarily or ignore guiding rules or principles, which is the only legitimate basis on which we could find it

---

[2] As the court of appeals noted, "Barney denied the accusations made by Amanda and her daughters and claimed that his actions had no part in dissolving the marriage. Barney testified, '[Amanda's] got another man in the house. She's lied to courts. She's lied to you people. Her kids are lying. And it's destroyed my life.'" 487 S.W.3d at 312. In light of Barney's conviction and the trial court's finding of cruelty in this case, we give no credence to Barney's denials.

abused its discretion. In fact, the Family Code did not require the trial court to disproportionately divide the house or even consider Barney's "fault" at all. As we explained in *Young*, the Code permits a trial court to consider a party's fault when deciding how to divide the marital property, but this "does not mean that fault must be considered in all cases where a divorce is granted on fault grounds." *Young*, 609 S.W.2d at 762. In short, the law simply did not require the trial court to award all of the interest to Amanda.

Maybe it should. Maybe Texas law should require those who abuse their spouses or children or step-children to forfeit all interests in any property they used to commit those crimes. But the State's right, in the exercise of its police power, to "declare a forfeiture of the property of private individuals" involves policy decisions best exercised by the Legislature, not by this Court. *State v. Richards*, 301 S.W.2d 597, 600 (Tex. 1957). Ours is a judicial function—not a legislative one—and we must "take statutes as we find them." *Entergy Gulf States, Inc. v. Summers*, 282 S.W.3d 433, 443 (Tex. 2009). The Legislature has granted trial courts discretion to determine what is just and right, and we have no authority to impose our judgment on that question.

## II.
### Supporting Evidence

In his concurring opinion, JUSTICE DEVINE crafts a different ground for reversal, concluding that the record "does not provide sufficient information about the community estate for the trial court to make an equitable division." *Ante* at ___ (DEVINE, J., concurring). His conclusion will be a huge surprise to the courts below, but no one will be as shocked as Amanda, who repeatedly and consistently asserted the opposite. Throughout the case, Amanda has never once complained about the sufficiency of the evidence. To the contrary, as the party who bore the

8

evidentiary burden to support a disproportionate property division, Amanda has always contended that she submitted sufficient evidence.

In the trial court, Amanda argued that the evidence "would justify [the trial court] in ruling that [the house on Florey Lake Road] should be totally awarded to her." In the court of appeals, she argued that the evidence supported awarding the entire interest to her and that the "value" of the parties' personal property was not "an issue" because "only one asset [the house] is at issue." And in her brief to this Court, she asserted that the record "contains sufficient evidence upon which the trial court could determine the division of property," and although "the parties' testimony is conflicting, it provides sufficient evidence to support a determination of division of community property."

As the concurring opinion explains, Amanda "submits in her briefing that sufficiency of the evidence is not an independent ground of reversible error. Instead, she claims it is a factor relevant to the assessment of whether the trial court abused its discretion, that is, whether the trial court had sufficient evidence on which to exercise its discretion." *Ante* at ___ (DEVINE, J., concurring). To be exact, Amanda's brief explains:

> Review of the trial court's division of property, involves a two pronged inquiry:
>
> (1) did the trial court have sufficient evidence upon which to exercise its discretion?
>
> (2) Did the trial court err in its application of that discretion?
>
> Under the first prong, legal and factual insufficiency are not independent grounds of reversible error. They constitute factors relevant to assessment of whether the trial court abused its discretion. *Garza v. Garza*, 217 S.W.3d 538, 549 (Tex. App.—San Antonio 2006, no pet.); *Moroch v. Collins*, 174 S.W.3d 849, 857 (Tex. App.—Dallas 2005, pet. denied).

9

Under the second prong, appellate review begins with the presumption that the trial court properly exercised its discretion, and therefore, the property division will only be disturbed if the trial court ordered a division that is manifestly unfair and unjust. *Murff*, 515 S.W.2d at 699.

Amanda then agrees that the first "prong" is not at issue in this case because the evidence is sufficient to allow the trial court to make a just and right division of the parties' community property:

> Under the first prong of appellate review, the trial record at bar contains sufficient evidence upon which the trial court could determine the division of property. Both Amanda and Sam, as well as Amanda's teenage daughters testified. Although the parties' testimony is conflicting, it provides sufficient evidence to support a determination of division of community property.

Instead, she focuses solely on the second prong, arguing that "[u]nder the second prong of appellate review, the trial court's division of property should be examined to see if there was an abuse of discretion," and "[b]eginning with a presumption that the trial court properly exercised its discretion, the trial court's decision at bar is manifestly unfair and unjust."

In short, the concurrence's assertion that Amanda complains that "no evidence supports Barney's award of a 20 percent interest in the Florey Lake property," *ante* at ___ (DEVINE, J., concurring), is simply not true.[3] The concurrence notes that Amanda "argues that 'the record is totally silent as to any rationale' for awarding Barney any interest in the Florey Lake property," *ante* at ___ (DEVINE, J., concurring), but that argument addresses the trial court's failure to explain its reasoning, not any lack of evidence to support its reasoning. Specifically, Amanda argues:

---

[3] The concurrence accurately describes Amanda's argument in its very next sentence: "In short, Amanda argues that the property division, though disproportionately in her favor, still is not 'just and right.'" *Ante* at __ (DEVINE, J., concurring). Amanda argues that justice required the trial court to award all of the house's interest to her, but she never argues that "no evidence supports" the award of some interest to Barney.

10

[A]n award to her of 100% interest in the community property home (78 Florey Lake) would be just and right, in view of the fact that [Barney] is a convicted multiple child molester and wife abuser, and his criminal acts lead directly to the parties' divorce on grounds of cruelty. To award [Barney] any interest in the home (a crime scene) where the victims of his crimes now reside is simply an abuse of discretion.

The trial court did grant a fault based divorce. But the record is totally silent as to any rationale for awarding [Barney] any interest at all in the parties' homestead, a residence that was the crime scene of multiple sex crimes committed by [Barney] against his stepdaughters.

Our "well-established error-preservation rules . . . preclude a party from seeking appellate review of an issue that the party did not properly raise in the trial court." *G.T. Leach Builders, LLC v. Sapphire V.P., LP*, 458 S.W.3d 502, 516 (Tex. 2015).[4] And we "have held repeatedly that the courts of appeals may not reverse the judgment of a trial court for a reason not raised in a point of error." *Walling v. Metcalfe*, 863 S.W.2d 56, 58 (Tex. 1993) (per curiam).[5] A party simply waives

---

[4] *See* TEX. R. APP. P. 33.1(a)(1) ("As a prerequisite to presenting a complaint for appellate review, the record must show that . . . the complaint was made to the trial court."); *Wells Fargo Bank, N.A. v. Murphy*, 458 S.W.3d 912, 916 (Tex. 2015) ("'Parties are restricted on appeal to the theory on which the case was tried.' Appellate courts are similarly restricted and may not overlook the parties' trial theories.") (quoting *Davis v. Campbell*, 572 S.W.2d 660, 662 (Tex. 1978)).

[5] *See Murphy*, 458 S.W.3d at 916 ("A court of appeals commits reversible error when it sua sponte raises grounds to reverse a summary judgment that were not briefed or argued in the appeal."); *Garcia v. Robinson*, 817 S.W.2d 59, 60 (Tex. 1991) (per curiam) ("The court of appeals should not have reached this issue, however, because the Robinsons did not raise it in the trial court or brief it on appeal."); *Vawter v. Garvey*, 786 S.W.2d 263, 264 (Tex. 1990) (per curiam) ("A court of appeals may not reverse a trial court's judgment in the absence of properly assigned error."); *San Jacinto River Auth. v. Duke*, 783 S.W.2d 209, 210 (Tex. 1990) (per curiam) ("A court of appeals may not reverse a trial court's judgment in the absence of properly assigned error."); *State Bar of Tex. v. Evans*, 774 S.W.2d 656, 658 n.5 (Tex. 1989) ("None of the arguments were raised by Evans at trial or on appeal, and the court of appeals thus erred in raising these arguments sua sponte and basing its reversal on these grounds."); *Tex. Nat. Bank v. Karnes*, 717 S.W.2d 901, 903 (Tex. 1986) (per curiam) ("The court of appeals may not reverse a trial court's judgment in the absence of properly assigned error."); *Cent. Educ. Agency v. Burke*, 711 S.W.2d 7, 8 (Tex. 1986) (per curiam) ("An appellate court is not authorized to reverse a trial court's judgment in the absence of properly assigned error."); *Prudential Ins. Co. v. J.R. Franclen, Inc.*, 710 S.W.2d 568, 569 (Tex. 1986) (per curiam) ("An appellate court is not authorized to reverse a trial court's judgment in the absence of properly assigned error."); *State Bd. of Ins. v. Westland Film Indus.*, 705 S.W.2d 695, 696 (Tex. 1986) (per curiam) ("An appellate court is not authorized to reverse a trial court's judgment in the absence of properly assigned error.") (citing *Gulf Consol. Int'l, Inc. v. Murphy*, 658 S.W.2d 565, 566 (Tex. 1983) (per curiam) ("The court of appeals is not authorized to reverse a trial court's judgment in the

any issue it fails to properly "present . . . in the courts below." *State Office of Risk Mgmt. v. Martinez*, 539 S.W.3d 266, 273 (Tex. 2017).[6]

Error-preservation rules govern this Court as well. A petition filed in this Court "must state concisely all issues or points presented for review," and if "the matter complained of originated in the trial court, it should have been preserved for appellate review in the trial court and assigned as error in the court of appeals." TEX. R. APP. P. 53.2(f). "Neither [the court of appeals] *nor this court* is authorized to reverse a trial court's judgment in the absence of a properly assigned error or one which can properly be classified as fundamental." *Tex. Power & Light Co. v. Cole*, 313 S.W.2d 524, 529 (Tex. 1958) (emphasis added). We are simply "without jurisdiction" to consider an issue that "was not affirmatively pleaded" in the trial court and "not assigned as error" in the court of appeals or this Court. *Edwards v. Strong*, 213 S.W.2d 979, 980 (Tex. 1948).

These rules are not meaningless technicalities that we can ignore at will. "Important prudential considerations underscore our rules on preservation." *In re B.L.D.*, 113 S.W.3d 340, 350 (Tex. 2003). They "conserve[] judicial resources by giving trial courts an opportunity to correct an error before an appeal proceeds." *Id.* They "further the goal of accuracy in judicial decision-making [by giving] lower courts [an] opportunity to first consider and rule on error." *Id.*

---

absence of a properly assigned error.")); *Am. Gen. Fire & Cas. Co. v. Weinberg*, 639 S.W.2d 688, 689 (Tex. 1982) ("The Court of Appeals erred when it reversed the trial court's judgment on a point neither party assigned.").

[6] *See Nall v. Plunkett*, 404 S.W.3d 552, 556 (Tex. 2013) (per curiam) (holding that party "waived the issue of whether summary judgment was proper on the merits in this case by failing to brief it in the court of appeals"); *Samples Exterminators v. Samples*, 640 S.W.2d 873, 875 (Tex. 1982) (per curiam) (holding that party "waived his right to complain of" issue he failed to present as a point of error in the court of appeals and that the "court of appeals erred in reversing the trial court's judgment in the absence of properly assigned error").

And importantly here, they "promote fairness among litigants. A party 'should not be permitted to waive, consent to, or neglect to complain about an error at trial and then surprise his opponent on appeal by stating his complaint for the first time.'" *Id.* (quoting *Pirtle v. Gregory*, 629 S.W.2d 919, 920 (Tex. 1982) (per curiam)). In this case, Barney has never had an opportunity or any need to argue that sufficient evidence supports the judgment because Amanda has consistently agreed that it does.

This Court, of course, must comply with the rules that govern appeals as well. When a party fails to complain that the evidence is insufficient and instead asserts the opposite at every level, the law simply does not permit us to consider that issue. Because Amanda has never complained about the sufficiency of the evidence and instead asserts that the evidence is sufficient, it is "error for [this Court] to address it sua sponte." *Murphy*, 458 S.W.3d at 916.

The great irony here is that Amanda, as the party seeking a disproportionate division of the community property, bore the burden to provide evidence sufficient to support any judgment disproportionately awarding the Florey Lake house's interest to her. *See Haley v. Haley*, 713 S.W.2d 801, 803 (Tex. App.—Houston [1st Dist.] 1986, no writ). And as the party now challenging the judgment, Amanda bears the burden to demonstrate that the trial court abused its discretion. *See Zeptner*, 111 S.W.3d at 734.[7] If, as the concurring opinion would hold, the record lacks an adequate "inventory" or information regarding the relevant property's "value," *ante* at ___,

---

[7] *See also Finch v. Finch*, 825 S.W.2d 218, 221 (Tex. App.—Houston [1st Dist.] 1992, no writ) ("One who complains of the way the trial court divided the properties must be able to show from the evidence in the record that the division is so unjust and unfair as to constitute an abuse of discretion."); *Gendebien v. Gendebien*, 668 S.W.2d 905, 909 (Tex. App.—Houston [14th Dist.] 1984, no writ) ("Appellant has failed to prove that Appellee owned such land and has failed to show the trial court abused its discretion in the division of the community property.").

Amanda failed to provide that evidence. *Id.* Ironically (and erroneously), the concurring opinion would rule in Amanda's favor on insufficient-evidence grounds even though Amanda—who as Petitioner must demonstrate that the evidence is insufficient—asserts the very opposite.

The concurrence does not explain whether it finds the evidence factually or legally insufficient. Although it concludes that the record contains "*no* evidence" regarding a couple of the relevant factors, *ante* at \_\_\_, \_\_\_ (DEVINE, J., concurring) (emphasis added), it also asserts that the record "does not provide *sufficient* information about the community estate," *ante* at \_\_\_ (DEVINE, J., concurring) (emphasis added). Because the abuse-of-discretion standard governs, "legal and factual sufficiency are relevant factors in assessing whether the trial court abused its discretion," rather than "independent grounds of error." *Zeptner v. Zeptner*, 111 S.W.3d 727, 734 (Tex. App.—Fort Worth 2003, no pet.); *see Beaumont Bank v. Buller*, 806 S.W.2d 223, 226 (Tex. 1991) (holding that abuse-of-discretion standard applied to review of turnover order, but "[w]hether there was no evidence to support the turnover award would, of course, be a relevant consideration in determining if the trial court abused its discretionary authority in issuing the order"). Under our Constitution, however, this Court cannot consider whether the evidence is factually insufficient because the courts of appeals' decisions "shall be conclusive on all questions of fact brought before them on appeal or error." TEX. CONST. art. V, § 6. The "task of weighing all the evidence and determining its sufficiency is a power confined exclusively to the court of appeals." *Coulson v. Lake LBJ Mun. Util. Dist.*, 781 S.W.2d 594, 597 (Tex. 1989). We can only consider whether *no* evidence supports the trial court's decision. To the extent the concurring opinion finds the evidence factually insufficient, it would exercise jurisdiction we do not have. *See*

14

*Campbell v. State*, 85 S.W.3d 176, 184 (Tex. 2002) ("[W]e do not have jurisdiction to review the factual sufficiency of the evidence.").

Amanda, however, is correct that the evidence supports the property division. The trial court held four separate hearings before entering the judgment Amanda now challenges on appeal. Amanda testified at all of them, Barney testified at three, and Amanda's two daughters each testified at one. The testimony focused on the Florey Lake house, the parties' personal property, and Barney's fault in causing the marriage to fail. At three of the four hearings, the trial court personally asked Amanda or Barney for additional information about their personal property and the house on Florey Lake.

Much of the evidence was undisputed. Amanda and Barney were married for about three years, and no children were born or adopted during the marriage. Before they married, Amanda owned a different house, solely in her own name, which she had acquired in a prior divorce. They lived in that first house together for about a year, during which she paid the monthly $450 mortgage payments using income from her job. A fire destroyed that house, and the insurance company paid benefits of about $167,000 for the house, about $60,000 for the contents, and about $13,000 for additional living expenses. The insurance company paid these benefits by check made payable to both Amanda and Barney, which Amanda agreed to "because [they] were married." They used $40,000 of the insurance payment to pay off the mortgage on the first house and then sold that property "to some friends really cheap." They then used $120,000 to buy the Florey Lake house, "cash outright." The title to the new house was in Amanda's name only, but they relied on Barney's social security disability status to reduce the property taxes. They used the rest of the insurance

15

money to maintain and improve the house and to buy furnishings and other property including "two Harleys," furniture, equipment, and a trailer.[8]

Barney testified that he brought a lot of personal property to the marriage, including a vehicle, multiple TVs, DVD players, furniture, mattresses, and dishes, because Amanda's ex-husband had "cleaned her out." Amanda disagreed, testifying that the only thing Barney brought to the marriage was a "raggedy" truck, some clothes, some tools, and a car and other items that belonged to Barney or his brother. And despite his conviction, Barney denied Amanda's and her daughters' testimony detailing how he repeatedly abused each of them. Regarding the property, Barney claimed that, after they married, he contributed work to repair the plumbing and water damage at the first house and to maintain and build an addition on and improvements to the Florey Lake house. Amanda did not dispute this, but could not remember if it was true. Nor did she dispute Barney's "best estimate" that the combined value of the house and all personal property at the time of the divorce was "[b]etter than $200,000." And Amanda did not dispute Barney's testimony that she took $5,000 of his social security payments from his account after they separated.

The concurrence mentions several reasons why it believes this evidence is insufficient to support the trial court's division, but none of them have merit. It observes, for example, that the division "seems to be an exceedingly generous award to Barney even before consideration of fault," and "even more untenable" when fault is considered. *Ante* at ___ (DEVINE, J., concurring).

---

[8] The parties provided much of this testimony to support their competing positions on whether the Florey Lake house was Amanda's separate property. The trial court ultimately held that it was community property, and the court of appeals affirmed. Amanda does not complain of that holding in this Court, so we must accept that the house is community property.

16

But this point complains of the *effect* of evidence, not the *lack* of evidence. We have made it clear that trial courts can wholly refuse to consider fault, even "where a divorce is granted on fault grounds." *Young*, 609 S.W.2d at 762. And if the trial court decides to consider it, "[f]ault and disparity in the parties' incomes are only two of the many factors the trial court should consider when dividing a marital estate." *Stafford v. Stafford*, 726 S.W.2d 14, 16 (Tex. 1987). The concurrence's view that the award was "exceedingly generous" or "untenable" does not support its conclusion that the evidence was insufficient. To the contrary, if the evidence is sufficient to allow the concurring opinion to reach that conclusion, it was sufficient to enable the trial court to divide the property as well.

The concurrence also rejects Barney's testimony regarding "the substantial work he put into repairing and improving both houses," concluding that his argument "is in the nature of a reimbursement claim but the record contains no evidence of the values involved." *Ante* at ___ (DEVINE, J., concurring). But Barney's argument is not in the nature of a reimbursement claim. Reimbursement claims involve a request for payments between the community property and one spouse's separate property or between the two spouses' separate-property estates. TEX. FAM. CODE § 3.402(a); *Vallone*, 644 S.W.2d at 459 ("A right of reimbursement arises when the funds or assets of one estate are used to benefit and enhance another estate without itself receiving some benefit.") (citing *Dakan v. Dakan*, 83 S.W.2d 620, 627 (Tex. 1935)). Here, Amanda no longer disputes that the Florey Lake house is community property, so we must accept that it is. Even if evidence of specific values is required to justify transferring one spouse's separate property to the community estate or community property to one spouse's separate estate, no authority requires more to support

17

the trial court's equitable division of community property in which each spouse otherwise owns an equal interest.

The concurrence also complains that the parties failed to submit an inventory providing the value of the parties' various personal property. *Ante* at ___ (DEVINE, J., concurring). But no law requires an inventory. *See* TEX. FAM. CODE § 6.502(a)(1) (providing that trial court "may" order one or both parties to submit an inventory "of the real and personal property owned or claimed by the parties"). And as Amanda herself agrees, the trial court awarded *all* of that property to her, and the division of the community interest in the Florey Lake house is the *only* issue in this appeal. The record contains evidence that the house is worth at least $120,000, and the house and personal property combined are worth "better than $200,000." So—to use the concurring opinion's own standards—the evidence provided the trial court with "some understanding of the extent and value of the community estate," *ante* at ___ (DEVINE, J., concurring), including "evidence of the extent of the community estate or its value," *ante* at ___ (DEVINE, J., concurring), and "sufficient information [for the trial court] to make a rational decision," *ante* at ___ (DEVINE, J., concurring).

The concurring Justices disagree with the trial court's division, but that provides no valid basis to reverse it. To the contrary, because the abuse-of-discretion standard governs, we *must* affirm "if there is *any* basis in the record to support its decision." *Ante* at ___ (DEVINE, J., concurring) (emphasis added) (citing *Rosemond v. Al-Lahiq*, 331 S.W.3d 764, 766 (Tex. 2011) (per curiam); *Worford v. Stamper*, 801 S.W.2d 108, 109 (Tex. 1990) (per curiam)). The trial court conducted four separate hearings and repeatedly personally questioned Amanda and Barney to learn more about their marital estate, and particularly about the Florey Lake house. Yet the

18

concurrence would hold that the trial court acted *arbitrarily* and *abused* its discretion because it lacked sufficient information. And it would hold that the court of appeals committed error because no evidence supports the trial court's decision, even though Amanda never raised that issue. Our preservation requirements and the applicable standard of review prohibit such ivory-tower quarterbacking.

Finally, the concurrence asserts that *In re Marriage of Brown*, 187 S.W.3d 143 (Tex. App.—Waco 2006, no pet.), supports its holding because the circumstances in this case are "reminiscent of those" in *Brown*. *Ante* at ___ (DEVINE, J., concurring). Although the underlying facts are tragically similar, the procedural "circumstances" and the trial court's awards are completely opposite. In *Brown*, the husband appealed and argued that the trial court abused its discretion by awarding 100% of the community estate to the wife. 187 S.W.3d at 146. The court of appeals agreed, concluding that the trial court abused its discretion because "the trial court was not provided adequate information about what was being divided; the value of assets, outstanding debts, and other relevant considerations like [the husband's] total defense cost," and "the trial court improperly considered the uses for which [the husband] was apparently going to spend his community share." *Id.* at 148. The issue in *Brown* was whether the trial court abused its discretion by awarding *all* of the community estate to the wife. *Id.* at 146. Here, the issue is whether the trial court abused its discretion by *not* awarding all of the community estate to the wife.

"The party complaining of the division of the community estate has the burden of showing from the evidence in the record that the trial court's division of the community estate was so unjust and unfair as to constitute an abuse of discretion." *In re Marriage of C.A.S. & D.P.S.*, 405 S.W.3d

19

373, 384 (Tex. App.—Dallas 2013, no pet.). Here, Amanda relies on the record evidence to argue that the trial court's division was unjust and unfair. But she does not challenge the evidence itself, and instead agrees that the evidence was sufficient, which in fact it was.

### III.
### Conclusion

The facts here are undeniably egregious, but the law governing our review is clear. In this Court, the controlling issue is whether the trial court abused its discretion, not whether Barney abused Amanda and her daughters. The trial court divided the interests as it deemed just and right, and we cannot legitimately conclude that it acted arbitrarily or violated guiding rules and principles. Nor can we accomplish that result by declaring the trial court's decision to be "unlawful" or by *sua sponte* inventing an evidentiary issue that Amanda never raised and that contradicts her own assertions. Regardless of how we might have ruled had we presided in the trial court, we simply have no *proper* basis on which to hold that the trial court abused its discretion.

_____
Jeffrey S. Boyd
Justice

Opinion delivered: June 29, 2018