

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-22-00035-CV
_____

IN THE MATTER OF THE MARRIAGE OF ROBERT MOORE AND
ZULEMA JUANA MARIA RODRIGUEZ CALDERON MOORE

On Appeal from the 102nd District Court
Bowie County, Texas
Trial Court No. 18D0758-102

Before Morriss, C.J., Stevens and van Cleef, JJ.
Memorandum Opinion by Justice van Cleef

## MEMORANDUM OPINION

In 2008, Robert Moore married Zulema Juana Maria Rodriguez Calderon Moore in Monterrey, Mexico. At the time, Robert was sixty years old and Zulema was twenty-seven. Over the next ten years, the couple did not live together, except for about six weeks in the spring of 2018. On December 9, 2021, the trial court granted Robert's petition for divorce on the ground of insupportability[1] and awarded each party the property they had in their possession, along with any debts each party had incurred since the date of their separation. In this appeal, Zulema complains that the trial court (1) failed to enter findings of fact and conclusions of law and (2) abused its discretion by failing to order a just and right division of the marital property. Because Zulema was not harmed by the failure to enter findings of fact and conclusions of law and she has not shown that the trial court abused its discretion, we will affirm the trial court's judgment.

## I. Background

According to Robert, after a recent divorce, he joined an online dating site called Latin Cupid, found Zulema's profile, and began online communications with her. In October or November 2007, he drove to Monterrey, Mexico, where he met Zulema in a hotel bar, chatted with her, and took her out to dinner. The next day they drove around and went shopping, and then Robert returned to the United States.[2] After additional email correspondence and a few

---

[1]*See* TEX. FAM. CODE ANN. § 6.001.

[2]Zulema denied meeting Robert on a dating website, denied that a photograph of her taken by Robert that resembled a photograph posted on a Latin Cupid profile under the name Zulema was her, and testified that she met Robert in a hotel bar while he was on vacation in Monterrey. Before its oral pronouncement of judgment, the trial court noted

additional trips to Mexico, Robert married Zulema on February 22, 2008, in Monterrey. Robert testified that they did not have a honeymoon or sexual relations, and after a few days, Robert returned to Texas and Zulema remained in Mexico.

Robert hired an attorney to obtain visas for Zulema and her son and met Zulema in El Paso in late 2008 for her immigration interview. After the interview, the U.S. government denied visas to Zulema and her son, but Zulema did not tell Robert the reason. According to Robert, he had no relationship or communications with Zulema until the latter part of 2017 or early 2018, when she contacted him and wanted to come to the United States. He once again hired an attorney to obtain visas for Zulema and her son. At that time, he found out that Zulema had been denied a visa in 2008 because she had violated her tourist visa in 2007 and had been barred entry into the United States for five years.[3]

In late March 2018, the U.S. government issued a visa to Zulema. She then came to Texarkana and moved in with Robert. The parties' testimony regarding their relationship while Zulema was living with Robert and the reasons for Zulema's move to Dallas in May 2018 varied substantially.

The parties' testimony regarding the property owned during their marriage also varied. Robert testified that, during 2008, he sent Zulema money every month and bought her a computer, a telephone, and clothes. He also testified that he bought her a Jeep Grand Cherokee

---

that the person in the photograph introduced into evidence by Robert and the photographs on the Latin Cupid profile was Zulema.

[3]Although Zulema testified that her visa had been suspended because she worked while on a tourist visa, she later denied that she had been working and explained that, since the immigration officers accused her of working, she accepted it. She admitted that she was deported in 2007 and was barred entry for five years but maintained that Robert knew that when they were married.

and delivered it to her in May 2008. He did not know what happened to that vehicle. Robert also testified that he owned vehicles and property before he married Zulema but gave no further details. Although he denied acquiring any marital property with Zulema, he said that he bought his house in Texarkana in 2009 with funds he received from selling property on Lake Bob Sandlin and that Zulema made no contributions to the house.

On cross-examination, Robert testified that he sold the Texarkana house in 2019 and bought a condominium in Bryan for around $108,000.00. He made a down payment of approximately thirty percent on the condominium.[4] He sold the condominium less than ten months later and received $11,000.00, which he used to pay taxes, to pay his attorney, and to move into an apartment. Robert also testified that he had $40,000.00 in a checking account. Robert admitted that, during the marriage, he was listed as joint owner of a condominium in Garland County, Arkansas, and that he conveyed that interest, but he denied ever owning it. In addition, Robert testified that he included a lot of the furnishings in the Texarkana house with the sale of the house and that he owned a 2002 Tahoe but did not know its value.

Robert also introduced a copy of a March 2018 text message conversation between Zulema and him in which Zulema stated, "My house in Mexico I'm still paying for it, that's why I still can't sell it." It was Robert's understanding that Zulema had purchased that house in Mexico during their marriage. At trial, Zulema did not recall sending the message and maintained that she had never paid for a house in Mexico. On direct examination, Zulema testified that she did not have any bank accounts or an automobile in Texas. Although she

---

[4]The evidence showed that Robert received $39,415.40 from the sale of the Texarkana house and made a $31,296.00 down payment on the condominium.

4

testified that she worked all the time while she was in Mexico and that she had an accounting degree from a college in Mexico, she also denied that she had any assets in Mexico that she acquired during the marriage. Further, Zulema denied that Robert bought her a Grand Cherokee but testified that he bought her a 2018 Chevrolet pickup and that he had a four-door 2018 Chevrolet pickup when she lived in Texarkana in 2018.

At the conclusion of the final hearing, the trial court noted its serious concerns with Zulema's credibility because of her failure to acknowledge information under oath that had been proven through documentation and because of inconsistencies in her testimony. It also expressed concerns about the very divergent testimony of the parties and the inconsistencies in the testimony of both parties. In addition, the trial court expressed concern about the paucity of the testimony regarding Zulema's property in Mexico and the disposition of assets by Robert. After granting Robert's petition for divorce on the grounds of insupportability, the trial court awarded each party the property in their possession and ordered that each pay the debts they had incurred since the date of their separation.

## II. The Trial Court's Failure to Issue Findings of Fact and Conclusions of Law Was Not Harmful

Zulema complains that the trial court erred in failing to issue findings of fact and conclusions of law. Zulema timely requested findings of fact and timely filed a notice of past due findings. *See* TEX. R. CIV. P. 296, 297. "Following a proper request and reminder, it is mandatory for a trial court to make and file findings of fact and conclusions of law." *Culver v. Culver*, 360 S.W.3d 526, 538 (Tex. App.—Texarkana 2011, no pet.) (quoting *In re Grossnickle*,

5

115 S.W.3d 238, 253 (Tex. App.—Texarkana 2003, no pet.)). Consequently, "[f]ailing to file findings of fact and conclusions of law was error." *Id.*

Generally, "harm to the complaining party is presumed unless the contrary appears on the face of the record when the party makes a proper and timely request for findings and the trial court fails to comply." *Tenery v. Tenery*, 932 S.W.2d 29, 30 (Tex. 1996) (per curiam) (citing *Cherne Indus. v. Magallanes*, 763 S.W.2d 768, 772 (Tex. 1989)). Nevertheless, "[a] trial court's 'failure to make findings is not harmful error if 'the record before the appellate court affirmatively shows that the complaining party suffered no injury.'" *Id.* (quoting *Cherne Indus.*, 763 S.W.2d at 772). When, as here, "the trial court announces its reasons for its ruling in open court, the appellant's ability to present the appeal is not harmed because there was no need to guess the reasons for the trial court's adverse ruling." *Culver*, 360 S.W.3d at 538.

In this case, the trial court set forth its reasons for its disposition of the marital property[5] in open court. As a result, we are not forced to guess the basis of the trial court's reasoning. Therefore, we find that the trial court's error was not harmful. *See id.*; *Matter of Marriage of Lewis*, No. 06-19-00046-CV, 2020 WL 34919, at *3 (Tex. App.—Texarkana Jan. 3, 2020, no pet.) (mem. op.). We overrule this issue.

## III. Zulema Has Not Shown that the Trial Court Abused Its Discretion in Dividing the Community Property

Zulema also complains that the trial court abused its discretion in failing to order a just and right division of the community assets and liabilities. "The division of community property

---

[5]In her brief, Zulema contends that, without findings of fact and conclusions of law, she cannot tell whether the trial court mischaracterized the property or whether it ignored the community property presumption. However, there is no indication in the trial court's oral pronouncement that it found that any of the property disclosed at the hearing was the separate property of either party.

6

need not be equal." *Lewis*, 2020 WL 34919, at \*3 (citing *Matter of Marriage of Mozley*, No. 06-16-00004-CV, 2016 WL 4256926, at \*3 (Tex. App.—Texarkana Aug. 12, 2016, no pet.) (mem. op.)). "However, it 'must be "just and right, having due regard for the rights of each party."'" *Id.* (quoting *Bradshaw v. Bradshaw*, 555 S.W.3d 539, 543 (Tex. 2018) (quoting TEX. FAM. CODE ANN. § 7.001)).

"Because the standards for dividing a community estate involve the exercise of sound judgment, a trial court must be accorded much discretion in its decision." *Id.* at \*4 (quoting *Bradshaw*, 555 S.W.3d at 543). "The division 'should be corrected on appeal only where an abuse of discretion is shown in that the disposition made of some property is manifestly unjust and unfair.'" *Id.* (quoting *Bradshaw*, 555 S.W.3d at 543). "The appellate court cannot merely reweigh the evidence." *Id.* (quoting *Bradshaw*, 555 S.W.3d at 543). "Accordingly, we will reverse the trial court's judgment only where it 'clearly abused its discretion and if the error materially affects the court's just and right division of the property.'" *Id.* (quoting *Matter of Marriage of Williams*, No. 06-18-00041-CV, 2018 WL 6424245, at \*4 (Tex. App.—Texarkana Dec. 7, 2018, pet. denied) (mem. op.)). "Under an abuse of discretion standard, legal and factual sufficiency are relevant factors in assessing whether the trial court abused its discretion, but they are not independent grounds of error." *Id.* (quoting *Williams*, 2018 WL 6424245, at \*4 n.7 (citations omitted)). "If there is any reasonable basis for doing so, we must presume that the trial court properly exercised its discretion." *Id.* (quoting *Williams*, 2018 WL 6424245, at \*4).

"The party complaining of the trial court's property division must demonstrate from evidence in the record that the division was so unjust that the trial court abused its discretion."

*Id.* (quoting *Williams*, 2018 WL 6424245, at \*4). Further, "[e]ach party in a divorce proceeding has a responsibility to produce evidence of the value of various properties to provide the trial court with a basis upon which to make the division." *Reyes v. Reyes*, 458 S.W.3d 613, 620 (Tex. App.—El Paso 2014, no pet.) (citing *Higgins v. Higgins*, No. 08-99-00266-CV, 2000 WL 1757765, at \*2 (Tex. App.—El Paso, Nov. 30, 2000, no pet.)).

"[B]ecause it usually has no independent knowledge of the items comprising the marital estate nor of their worth," the trial court "is dependent upon the efforts of the litigants before it" in order to reach a just and right distribution of the estate. *In re Marriage of Palacios*, 358 S.W.3d 662, 663 (Tex. App.—Amarillo 2009, pet. denied). "This is so because it usually has no independent knowledge of the items comprising the marital estate nor of their worth." *Id.*

In this case, the parties were apparently less than forthcoming with the trial court in identifying the marital estate. On direct examination, Robert denied that he had acquired any marital property and vaguely claimed that he had owned property and vehicles before the marriage, without identifying those assets. Yet, on cross-examination, he admitted to buying and selling at least two residences during the marriage, admitted to having $40,000.00 in his checking account, and admitted to owning a 2002 Tahoe, but stated that he owned nothing else. All of those assets were presumptively community property.[6] For her part, even though Zulema had spent most of the marriage living and working in Mexico, she was only asked on direct examination whether she had an automobile or checking account in Texas. And although she

---

[6] "Property possessed by either spouse during or on dissolution of marriage is presumed to be community property." TEX. FAM. CODE ANN. § 3.003(a). The spouse claiming certain property as separate bears the "burden of rebutting the presumption of community property." *Pearson v. Fillingim*, 332 S.W.3d 361, 363 (Tex. 2011). "To do so, they must trace and clearly identify the property in question as separate by clear and convincing evidence." *Id.*

represented to Robert in a text message in March 2018 that she was still making payments on a house in Mexico (which was also presumptively community property) and that she had not sold it, she denied owning a house in Mexico. In addition, although she said that she worked all of the time she was in Mexico and that she had an accounting degree from a college in Mexico, she denied that she had any assets in Mexico that she acquired during the marriage. It is easy to see why the trial court found Zulema's testimony less than credible.

With both parties failing to fulfill their obligation to produce credible and probative evidence of the items comprising the marital estate and their worth, the trial court was left with little or no evidence upon which it could rely to make a just and right distribution of the marital estate. *See id.* at 664. Yet, the parties created this problem themselves, and faced with a lack of evidence at trial, the trial court awarded the parties the property that they had in their possession.

In this case, Zulema disclosed neither the assets that she had acquired during the marriage nor their value. A party that does not provide the trial court with information regarding what assets comprise the community estate and their value cannot use her failure to produce evidence at trial to complain that the trial court's division of the marital estate was not just and right. *See Lewis*, 2020 WL 34919, at *5; *Martinez Jardon v. Pfister*, 593 S.W.3d 810, 834 (Tex. App.— El Paso 2019, no pet.). Because Zulema failed to present evidence establishing the value of the house in Mexico or of any other assets that she may have acquired during the marriage, Zulema cannot "demonstrate from evidence in the record that the division was so unjust that the trial court abused its discretion." *Lewis*, 2020 WL 34919, at *4. We overrule this issue.

## IV.    Disposition

For the reason stated, we affirm the trial court's judgment.


                                            Charles van Cleef
                                            Justice

Date Submitted:     September 23, 2022
Date Decided:       October 19, 2022