

# NUMBER 13-22-00316-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

---

## IN THE INTEREST OF K.R., A CHILD

---

### On appeal from the County Court at Law No. 5
### of Nueces County, Texas.

---

# MEMORANDUM OPINION

**Before Chief Justice Contreras and Justices Benavides and Tijerina**
**Memorandum Opinion by Justice Benavides**

Appellant B.F. (Brenda)[1] appeals from the trial court's final order awarding her possessory conservatorship of her daughter Kayla. By a single issue, Brenda argues the evidence was legally and factually insufficient to overcome the presumption that it is in a child's best interest for a parent to be named permanent managing conservator. We affirm.

---

[1] On our own motion, we identify the parties and children in this case by fictitious names. *See* TEX. FAM. CODE ANN. § 109.002(d).

## I.   FACTUAL & PROCEDURAL BACKGROUND

On April 20, 2021, the Texas Department of Family and Protective Services (the Department) filed an original petition for the protection of Kayla, the child who is the subject of this case. An affidavit in support of removal was attached to the Department's original petition. According to the affidavit, Kayla was born testing positive for methamphetamine in June of 2020. On April 12, 2021, Kayla was admitted to the hospital for "an abscess on [her] left buttock" that Brenda had previously failed to fill a prescription to treat. This hospitalization ultimately led to the Department's intervention and the initiation of the case from which this appeal stems.

On July 8, 2021, Brenda was ordered to comply with the Department's service plan. According to the plan, Brenda was required to, among other things: (1) complete a substance abuse assessment and substance abuse classes; (2) submit to random drug testing; (3) complete a psychological evaluation; (4) participate in individual counseling to address her coping skills; (5) complete parenting classes; (6) refrain from criminal activities; (7) obtain gainful employment and stable housing; (8) participate in visitation with Kayla; and (9) maintain contact with the Department.

The order also awarded Brenda two hours of supervised visits with Kayla twice a week. However, on August 18, 2021, the trial court granted the Department's request to immediately suspend Brenda's visitation with Kayla. An order signed by the court on October 21, 2021, recites that "visitation [is] suspended until UA and [h]air [f]ollicle drug tests are completed."

The final hearing began on April 28, 2022. Brenda was not present during the hearing. On June 28, 2022, the trial court signed a final order appointing Sabrina, Brenda's adult daughter and Kayla's older sister, as permanent managing conservator of Kayla, and appointing Brenda as possessory conservator. The trial court's order also contains a finding that appointing Brenda as managing conservator was not in Kayla's best interest "because the appointment would significantly impair the child's physical health or emotional development." Paternity of the child was not established during this proceeding.

This accelerated appeal followed. *See* TEX. R. APP. P. 28.4.

## II.    CONSERVATORSHIP

Brenda argues that the evidence was insufficient to support her appointment as possessory conservator and Sabrina's appointment as managing conservator.

## A.    Standard of Review

"Trial courts have wide discretion with respect to conservatorship, control, possession, and visitation matters involving the child." *Compton v. Pfannenstiel*, 428 S.W.3d 881, 886 (Tex. App.—Houston [1st Dist.] 2014, no pet.) (first citing *Gillespie v. Gillespie*, 644 S.W.2d 449, 451 (Tex. 1982); and then citing *In re J.A.J.*, 243 S.W.3d 611, 616 (Tex. 2007)). We review a trial court's determination of conservatorship for an abuse of discretion, and we reverse the trial court's order only if we determine, from reviewing the entire record, that the trial court's decision was arbitrary and unreasonable. *Id.* A trial court abuses its discretion if it acts without reference to any guiding rules or principles. *Id.*

"In family law cases[,] the abuse-of-discretion standard of review overlaps with the

3

traditional sufficiency-of-the evidence standards of review." *Roberts v. Roberts*, 531 S.W.3d 224, 231 (Tex. App.—San Antonio 2017, pet. denied); *Bradshaw v. Bradshaw*, 555 S.W.3d 539, 549 (Tex. 2018) (Devine, J., concurring). Therefore, in our review of the trial court's appointment of Brenda as possessory rather than managing conservator, we consider whether: (1) the trial court had sufficient evidence upon which to exercise its discretion; and (2) the trial court erred in its application of that discretion. *Roberts*, 555 S.W.3d at 549 (citing *Monroe v. Monroe*, 358 S.W.3d 711, 719 (Tex. App.—San Antonio 2011, pet. denied)).

In determining whether there is legally sufficient evidence to support the trial court's exercise of discretion, a reviewing court considers evidence and inferences favorable to the finding if a reasonable factfinder could, and disregards evidence contrary to the finding unless a reasonable factfinder could not. *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005); *In re H.C.*, 942 S.W.2d 661, 664 (Tex. App.—San Antonio 1997, no writ). In analyzing factual sufficiency challenges, an appellate court examines the entire record to determine if the trial court's finding is so against the great weight and preponderance of the evidence as to be manifestly unjust. *In re C.H.*, 89 S.W.3d 17, 25 (Tex. 2002); *Manon v. Tejas Toyota, Inc.*, 162 S.W.3d 743, 752–53 (Tex. App.—Houston [14th Dist.] 2005, no pet.).

**B.    Applicable Law**

"The best interest of the child shall always be the primary consideration of the court in determining the issues of conservatorship and possession of and access to the child." TEX. FAM. CODE ANN. § 153.002. There is a rebuttable presumption that it is in the best

4

interest of the child for at least one parent to be appointed as a managing conservator of the child. *Id.* § 153.131(b). However, if "the court finds that appointment" of a parent as managing conservator "would not be in the best interest of the child because the appointment would significantly impair the child's physical health or emotional development," the presumption no longer applies. *Id.* § 153.131(a); *In re F.E.N.*, 579 S.W.3d 74, 76–77 (Tex. 2019) (per curiam). A finding that the appointment of a parent as managing conservator would significantly impair a child's physical health or emotional development need only be supported by a preponderance of the evidence. *In re D.L.W.W.*, 617 S.W.3d 64, 94 (Tex. App.—Houston [1st Dist.] 2020, no pet.).

The underlying concern behind § 153.131(a) is the child's well-being. *In re J.A.J.*, 243 S.W.3d 611, 616 (Tex. 2007). "Thus, in order to deprive a parent of custody, the evidence must support a logical inference that some specific, identifiable behavior or conduct of the parent will probably cause significant physical or emotional harm to the child." *May v. May*, 829 S.W.2d 373, 377 (Tex. App.—Corpus Christi–Edinburg 1992, writ denied); *see Lewelling v. Lewelling*, 796 S.W.2d 164, 167 (Tex. 1990). "Acts or omissions that constitute significant impairment include, but are not limited to, physical abuse, severe neglect, abandonment, drug or alcohol abuse, or immoral behavior by the parent." *In re S.T.*, 508 S.W.3d 482, 492 (Tex. App.—Fort Worth 2015, no pet.). "Likewise, the parent's treatment of other children may be relevant." *Id.*

In determining the best interest of the child, courts may consider the following non-exhaustive factors:

(1)     the desires of the children;

(2)     the emotional and physical needs of the child now and in the future;

(3)     the emotional and physical danger to the child now and in the future;

(4)     the parental abilities of the individuals seeking custody;

(5)     the programs available to assist these individuals to promote the best interest of the child;

(6)     the plans for the children by the parents;

(7)     the stability of the home or proposed placement;

(8)     the acts or omissions of the parent which may indicate the existing parent-child relationship is not a proper one; and

(9)     any excuse for the acts or omissions of the parent.

*Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976). However, there is no requirement that the trial court hear evidence concerning each of the *Holley* factors, and the trial court is permitted to consider additional factors in determining a child's best interest. *See In re D.M.*, 58 S.W.3d 801, 814 (Tex. App.—Fort Worth 2001, no pet.) (citing *Holley*, 544 S.W.2d at 371–72); *see also In re J.L.V.*, No. 09-19-00316-CV, 2020 WL 1161098 at *11 (Tex. App.—Beaumont Mar. 11, 2020, pet. denied) (mem. op.). In cases brought by the Department, there is also a presumption that "the prompt and permanent placement of the child in a safe environment is . . . in the child's best interest." TEX. FAM. CODE ANN. § 263.307.

## C.     Evidence

At the final hearing, the following evidence was presented:

### 1.     Jennifer Dragoo's Testimony

Jennifer Dragoo, a caseworker for the Department, testified concerning Brenda's

progress during the case. According to Dragoo, Brenda only submitted to one drug test, despite being "court-ordered by the judge on five occasions" to participate in drug testing. Although the drug test she took produced a clean result, Brenda did not submit to the drug test until four weeks after it was requested. Additionally, the only portion of her service plan that Brenda completed was "[t]he psychological evaluation," which was done "approximately three and a half weeks" prior to the final hearing.

Dragoo testified that Kayla was placed with her biological sister and Brenda's oldest daughter, Sabrina. Dragoo believed Sabrina was going "[a]bove and beyond" in meeting Kayla's needs and that Sabrina and Kayla were bonded. Dragoo believed that it was in Kayla's best interest for Sabrina to be awarded permanent managing conservatorship.

Dragoo also testified that Brenda absconded with Kayla during the investigative stage of the case and later told Sabrina that she would abscond with Kayla again if she had the opportunity. According to Dragoo, the last communication she had with Brenda was approximately two weeks prior to the hearing, where Brenda "requested some photos and videos of" Kayla. However, Dragoo explained that Brenda's visitation with Kayla was suspended approximately "two to three months into the case . . . due to her failure to be compliant with court-ordered drug testing." Dragoo's understanding of the suspension order was that the court might revisit its decision concerning Brenda's visitation once Brenda submitted to a drug test. Dragoo recommended that any visitation awarded to Brenda be conditioned on a clean drug test result.[2]

---

[2] The provision concerning possession in the final order was as follows:

### 2. Sabrina's Testimony

Sabrina testified that she was removed from Brenda's care when she was a child and was only raised by her mother "[h]ere and there." She also acknowledged that her siblings, Brenda's other children, had been the subject of other Department proceedings as well.

Kayla was officially placed in Sabrina's care by the Department on June 20, 2021. However, Sabrina testified that she had been taking care of Kayla since her birth. According to Sabrina, Kayla was thriving in her care and the two were "very much" bonded. Sabrina confirmed that Brenda had not seen Kayla since either July or August of 2021. Sabrina testified that Brenda "harasses me through text messages," and tells her "that she's going to make sure" Sabrina "won't ever see" Kayla again. Sabrina believed Brenda would try to abscond with Kayla if they attempted supervised visits in a public setting and therefore thought visits at "[a] visitation center would be best." Sabrina affirmed that she was willing to let Brenda have visits with Kayla, "[a]s long as she has a clean drug test."

## D. Best Interest Analysis

The first *Holley* factor contemplates the child's desires. *See Holley*, 544 S.W.2d at 372. Kayla was not yet two years old at the time of the final hearing. "When children are too young to express their desires, the factfinder may consider whether the children have

---

The Court ORDERED [Brenda] to be Possessory Conservator with supervised visitation at [the] discretion of [Sabrina], or for a minimum of 2 hours a month at a Visitation Center at mother[']s expense. Caregiver may request [a] negative UA drug test prior to visitation. 72 hour advanced notification shall be required.

bonded with the [placement], are well-cared for by them, and have spent minimal time with a parent." *In re S.R.*, 452 S.W.3d 351, 369 (Tex. App.—Houston [14th Dist.] 2014, pet. denied). Here, Dragoo testified that Kayla and Sabrina were bonded, and that Sabrina had gone "[a]bove and beyond" in meeting Kayla's needs. On the other hand, Brenda had been sporadically involved in Kayla's life. At the time of the hearing, Brenda had not visited with Kayla for over eight months—nearly half the child's life—which was due in part to her refusal to timely submit to court-ordered drug testing.

We address the second, third, and seventh factors together. "The need for permanence is a paramount consideration for a child's present and future physical and emotional needs." *In re J.G.S.*, 550 S.W.3d 698, 705 (Tex. App.—El Paso 2018, no pet.). The court heard testimony that Sabrina had cared for Kayla her entire life. However, Brenda's presence in Kayla's life was not consistent. Although Brenda had expressed an interest in Kayla's well-being and asked for pictures and videos of her, "[a]ctions speak louder than words." *In re K.S.*, 420 S.W.3d 852, 856 (Tex. App—Texarkana 2014, no pet.). Questions about Kayla's status are not more probative of Brenda's commitment to be a permanent fixture in her life than the eight months during which Brenda had no visitation with Kayla.

The fourth and fifth factors concern the parenting abilities of and the programs available to the individuals seeking custody. *See Holley*, 544 S.W.2d at 372. Sabrina testified that based on her own experience, she believed her mother had a pattern of neglecting children. The Department developed a service plan to assist Brenda in improving her parenting abilities. The plan listed the resources that were available to

Brenda in completing her service plan. According to Dragoo, Brenda only completed the psychological evaluation portion of her service plan. No evidence was presented to explain Brenda's failure to complete the other portions of her service plan.

The sixth factor concerns the plans for the child by the persons seeking custody. *Id.* Brenda was not present at the hearing and there was no evidence that detailed her plans for Kayla. Sabrina testified that she was amenable to allowing visitation between Brenda and Kayla so long as the visits were supervised at an appropriate facility and Brenda passed a drug test.

The eighth and ninth factors deal with any acts or omissions on the part of a parent that may indicate the existing parent-child relationship is not a proper one, and whether there are any excuses for those acts or omissions. *Id.* Drug or alcohol abuse can be considered an act or omission that constitutes a threat of significant impairment to the child. *In re S.T.*, 508 S.W.3d at 492. "A factfinder may reasonably infer from a parent's refusal to take a drug test that the parent was using drugs." *In re E.M.*, 494 S.W.3d 209, 222 (Tex. App.—Waco 2015, pet. denied). Dragoo testified that Brenda failed to submit to drug tests on at least five occasions. Brenda did not provide the court with an excuse for why these tests were refused. In total, Brenda submitted to one drug test. Although the test produced a clean result, Dragoo testified that it was taken four weeks after the Department initially requested it. The court could have reasonably concluded that Brenda refused to submit to drug tests because those tests would have produced positive results. *See id.* Because of this, the court could have determined that Brenda's drug use would significantly impair Kayla. *See In re S.T.*, 508 S.W.3d at 492.

Because no *Holley* factor weighs in Brenda's favor, we cannot conclude the trial court abused its discretion by refusing to appoint her as managing conservator of Kayla. *See Compton*, 428 S.W.3d at 886. As such, we overrule Brenda's sole issue on appeal.

### III.  CONCLUSION

We affirm the trial court's judgment.

GINA M. BENAVIDES
Justice

Delivered and filed on the
20th day of October, 2022.