

# IN THE
# TENTH COURT OF APPEALS

No. 10-22-00043-CV

## IN THE INTEREST OF I.K.G., A CHILD

From the County Court at Law
Navarro County, Texas
Trial Court No. C21-29703-CV

## MEMORANDUM  OPINION

In four issues, appellants, J.G. and T.B., challenge the trial court's order appointing a non-parent, C.S., sole managing conservator and appointing J.G. and T.B. possessory conservators with supervised visitation of their child, I.K.G.  We affirm.

### Background

When I.K.G. was born in late 2019, the Texas Department of Family and Protective Services (the "Department") filed suit to terminate J.G. and T.B.'s parental rights to I.K.G. and another child.  J.G. and T.B. placed I.K.G. in C.S.'s care shortly after birth, and the Department non-suited its termination petition.

On May 12, 2021, after I.K.G. had been in C.S.'s custody for more than a year, C.S. filed her original petition in suit affecting the parent-child relationship seeking, among other things, sole managing conservatorship of I.K.G., no access for J.G. and T.B. or, in the alternative, supervised visitation, and child support. Both J.G. and T.B. were served with C.S.'s petition, but neither filed answers in the trial court. Nevertheless, both J.G. and T.B. participated in the hearing conducted on C.S.'s petition.

As they have throughout this case, J.G. and T.B. represented themselves. C.S. and J.G. testified at the hearing. At the conclusion of the hearing, the trial court signed an order appointing C.S. as sole managing conservator of I.K.G., appointing J.G. and T.B. as possessory conservators, ordering that J.G. and T.B.'s visitation with I.K.G. be supervised, and ordering J.G. and T.B. to each pay $200 per month in child support, among other things. Thereafter, J.G. and T.B. filed a joint pro se notice of appeal.

**Sealing of the Entire Clerk's and Reporter's Records**

At the outset of our opinion, we must address the trial court's decision to seal the entire Clerk's and Reporter's Records on its own motion.[1] Texas Rule of Civil Procedure 76a provides, in pertinent part, that:

---

[1] We recognize that Texas Rule of Civil Procedure 76a(8) provides that: "Any order (or portion of an order or judgment) relating to sealing or unsealing court records shall be deemed to be severed from the case and a final judgment which may be appealed by any party or intervenor who participated in the hearing preceding issuance of such order." TEX. R. APP. P. 76a(8). Here, neither party appeals the trial court's sealing order. However, because the trial court has sealed the entire Clerk's and Reporter's Record without following the provisions of Texas Rule of Civil Procedure 76a(8), and because the sealing of the entire Clerk's and Reporter's Records impacts this Court's ability to address the sufficiency arguments raised by the parties without violating the sealing order, we address the propriety of the trial court's sealing

No court order or opinion issued in the adjudication of a case may be sealed.  Other court records[2], as defined in this rule, are presumed to be open to the general public and may be sealed only upon a showing of all of the following:

> (a) a specific, serious and substantial interest which clearly outweighs:
>
>> (1) this presumption of openness;
>>
>> (2) any probable adverse effect that sealing will have upon the general public health or safety;
>
> (b) no less restrictive means than sealing records will adequately and effectively protect the specific interest asserted.

TEX. R. CIV. P. 76a(1).  The movant attempting to seal court records must prove these elements by a preponderance of the evidence.  *See* TEX. R. CIV. P. 76a(3) ("Court records may be sealed *only upon a party's written motion*, which shall be open to public inspection." (emphasis added)); *see also Musculoskeletal Imaging Consultants, LLC v. Jar Enters., Inc.*, 631 S.W.3d 739, 742 (Tex. App.—San Antonio 2021, no pet.).  Further, "[p]arties attempting to meet this standard must follow the rule's procedural requirements."  *HouseCanary, Inc. v. Title Source, Inc.*, 622 S.W.3d 254, 259 (Tex. 2021).  In addition to filing a written motion to seal, the movant must post notice advising the public that a hearing will be held on the

---

order.  *See* TEX. R. APP. P. 47.1 ("The court of appeals must hand down a written opinion that is as brief as practicable but that addresses every issue raised and necessary to final disposition of the appeal."), 47.3 ("All opinions of the courts of appeals are open to the public and must be made available to public reporting services, print or electronic.").

2 "Court Records," a defined in Texas Rule of Civil Procedure 76a are most court-filed documents and certain settlement agreements and certain discovery materials not filed of record.  TEX. R. CIV. P. 76a(2); *see Gen. Tire, Inc. v. Kepple*, 970 S.W.2d 520, 523 (Tex. 1998).

motion to seal describing the nature of the controversy and the records at issue and informing the public that any person may intervene and be heard. *See* TEX. R. CIV. P. 76a(3); *see also HouseCanary, Inc.*, 622 S.W.3d at 259. The movant must file verified copies of the posted notice with the trial court clerk and the clerk of the supreme court. *See* TEX. R. CIV. P. 76a(3). Thereafter, the trial court must hold a hearing on the motion to seal "as soon as practicable," but not sooner than fourteen days after the motion was filed and notice was posted. *See id.* at R. 76a(4). Orders determining motions relating to sealing or unsealing court records must be written, open to the public, and contain specific findings relating to Rule 76a(1). *See id.* at R. 76a(1), (6).

Based on the record before us, neither party filed a motion to seal the records, and the trial court did not conduct a hearing on the issue of sealing the record. Furthermore, the trial court's order contains none of the required findings under Texas Rule of Civil Procedure 76a(1). *See id.* at R. 76a(1). We therefore conclude that the trial court had no authority to seal the entire Clerk's and Reporter's Record on its own motion. *See id.; see also id.* at R. 76a(3). Accordingly, the trial court's sealing order is void. *See Masa Custom Homes, LLC v. Shahin*, 547 S.W.3d 332, 338 (Tex. App.—Dallas 2018, no pet.) (concluding that when a judge has no authority to render an order or judgment, that order or judgment is void). Because court records are presumed to be open, and because the trial court's sealing order is void for non-compliance with Texas Rule of Civil Procedure 76a,

we dissolve the trial court's order sealing the entire Clerk's and Reporter's Records signed on February 16, 2022.

<strong>Analysis</strong>

CONSERVATORSHIP

In their first issue, J.G. and T.B. argue that the trial court abused its discretion by naming C.S. as the sole managing conservator of I.K.G. because the evidence is insufficient to overcome the parental presumption that the appointment of J.G. and T.B. as sole or joint managing conservators would not significantly impair I.K.G.'s physical health and emotional development. We disagree.

### Standard of Review

"Trial courts have wide discretion with respect to conservatorship, control, possession, and visitation matters involving the child." *Compton v. Pfannenstiel*, 428 S.W.3d 881, 886 (Tex. App.—Houston [1st Dist.] 2014, no pet.) (citing *In re J.A.J.*, 243 S.W.3d 611, 616 (Tex. 2007); *Gillespie v. Gillespie*, 644 S.W.2d 449, 451 (Tex. 1982)). We review a trial court's determination of conservatorship for an abuse of discretion, and we reverse the trial court's order only if we determine, from reviewing the entire record, that the trial court's decision was arbitrary and unreasonable. *Id.* A trial court abuses its discretion if it acts without reference to any guiding rules or principles. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241-42 (Tex. 1985).

"In family law cases[,] the abuse-of-discretion standard of review overlaps with the traditional sufficiency-of-the-evidence standards of review." *Roberts v. Roberts*, 531 S.W.3d 224, 231 (Tex. App.—San Antonio 2017, pet. denied); *see Bradshaw v. Bradshaw*, 555 S.W.3d 539, 549 (Tex. 2018) (Devine, J., concurring). Therefore, in our review of the trial court's appointment of C.S. as sole managing conservator and J.G. and T.B. as possessory conservators, we consider whether: (1) the trial court had sufficient evidence upon which to exercise its discretion; and (2) the trial court erred in its application of that discretion. *Roberts*, 555 S.W.3d at 549 (citing *Monroe v. Monroe*, 358 S.W.3d 711, 719 (Tex. App.—San Antonio 2011, pet. denied)).

In determining whether there is legally sufficient evidence to support the trial court's exercise of discretion, a reviewing court considers evidence and inferences favorable to the finding if a reasonable factfinder could, and disregards evidence contrary to the finding unless a reasonable factfinder could not. *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005). The factfinder is the sole judge of the credibility of the witnesses and the weight to be given to their testimony. *See id.* at 819. The factfinder is free to believe one witness and disbelieve another, and reviewing courts may not impose their own opinions to the contrary. *Id.* As such, reviewing courts must assume that the factfinder decided all credibility questions in favor of the findings and chose what testimony to disregard in a way that was in favor of the findings, if a reasonable person could do so. *Id.* at 819-20.

Moreover, it is within the factfinder's province to resolve conflicts in the evidence. *Id.* at 820. Consequently, we must assume that, where reasonable, the factfinder resolved all conflicts in the evidence in a manner consistent with the findings. *Id.* Where conflicting inferences can be drawn from the evidence, it is within the province of the factfinder to choose which inference to draw, so long as more than one inference can reasonably be drawn. *Id.* at 821. Thus, we must assume that the factfinder made all inferences in favor of the findings if a reasonable person could do so. *Id.* The final test for legal sufficiency must always be "whether the evidence at trial would entitle reasonable and fair-minded people to reach the verdict under review." *Id.* at 827. Anything more than a scintilla of evidence is legally sufficient to support the finding. *See Cont'l Coffee Prods. Co. v. Cazarez*, 937 S.W.2d 444, 450 (Tex. 1996).

In analyzing a factual-sufficiency challenge, we examine the entire record to determine if the trial court's finding is so against the great weight and preponderance of the evidence as to be manifestly unjust. *In re C.H.*, 89 S.W.3d 17, 25 (Tex. 2002). We may not pass upon the witnesses' credibility or substitute our judgment for that of the factfinder, even if the evidence would support a different result. *2900 Smith, Ltd. v. Constellation New Energy, Inc.*, 301 S.W.3d 741, 746 (Tex. App.—Houston [14th Dist.] 2009, no pet.).

**Applicable Law**

"The best interest of the child shall always be the primary consideration of the court in determining the issues of conservatorship and possession of and access to the child." TEX. FAM. CODE ANN. § 153.002. There is a rebuttable presumption that it is in the best interest of the child for at least one parent to be appointed as managing conservator of the child. *Id.* § 153.131(b). However, "if the court finds that appointment" of a parent as managing conservator "would not be in the best interest of the child because the appointment would significantly impair the child's physical health or emotional development," the presumption no longer applies. *Id.* § 153.131(a); *see In re F.E.N.*, 579 S.W.3d 74, 76-77 (Tex. 2019) (per curiam). A finding that the appointment of a parent as managing conservator would significantly impair a child's physical health or emotional development need only be supported by a preponderance of the evidence. *In re D.L.W.W.*, 617 S.W.3d 64, 94 (Tex. App.—Houston [1st Dist.] 2020, no pet.).

The Texas Supreme Court has stated that the underlying concern behind section 153.131(a) is the child's well-being. *In re J.A.J.*, 243 S.W.3d at 616. "Thus, in order to deprive a parent of custody, the evidence must support a logical inference that some specific, identifiable behavior or conduct of the parent will probably cause significant physical or emotional harm to the child." *May v. May*, 829 S.W.2d 373, 377 (Tex. App.—Corpus Christi 1992, writ denied); *see Lewelling v. Lewelling*, 796 S.W.2d 164, 167 (Tex. 1990). "Acts or omissions that constitute significant impairment include, but are not limited to, physical abuse, severe neglect, abandonment, drug or alcohol abuse, or

immoral behavior by the parent." *In re S.T.*, 508 S.W.3d 482, 492 (Tex. App.—Fort Worth 2015, no pet.). "Likewise, the parent's treatment of other children may be relevant." *Id.*

In determining the best interest of the child, courts may consider the familiar *Holley* factors:

    (1) the desires of the child;

    (2) the emotional and physical needs of the child now and in the future;

    (3) the emotional and physical danger to the child now and in the future;

    (4) the parental abilities of the individuals seeking custody;

    (5) the programs available to assist these individuals to promote the best interest of the child;

    (6) the plans for the child by the parents;

    (7) the stability of the home or proposed placement;

    (8) the acts or omissions of the parent which may indicate the existing parent-child relationship was not a proper one; and

    (9) any excuse for the acts or omissions of the parent.

*Holley v. Adams*, 544 S.W.2d 367, 371-72 (Tex. 1976). There is no requirement that the trial court hear evidence concerning each of the *Holley* factors, and the trial court is permitted to consider additional factors in determining a child's best interest. *See In re D.M.*, 58 S.W.3d 601, 814 (Tex. App.—Fort Worth 2001, no pet.) (citing *Holley*, 544 S.W.2d at 371-72).

**Discussion**

The record reflects that when I.K.G. was born in late 2019, the Department filed suit to terminate J.G. and T.B.'s parental rights to I.K.G. and another child. J.G. and T.B. placed I.K.G. in C.S.'s care shortly after birth, and the Department non-suited its termination petition. C.S. testified that I.K.G. had been in her care and custody for almost two years as of the time of the hearing and that the Department had approved her home for placement. C.S. further testified that there is a history or pattern of neglect committed by J.G. and T.B.; that she has been responsible for I.K.G.'s safety and stability; that she has treated I.K.G. as her own child; and that appointing her sole managing conservator is in I.K.G.'s best interest. On cross-examination, C.S. acknowledged that J.G. had not ever put I.K.G. "in any kind of danger." C.S. did not know whether T.B. had placed I.K.G. "in any immediate danger."

In his testimony, J.G. emphasized that T.B. and he had a written agreement with C.S. to place I.K.G. with C.S. after he was born "because we were not allowed to have any children under the age of 18 in our care" and that "our agreement was for her to temporarily have him so we could get our other case dismissed or as soon as it's done in court and all."[3] J.G. admitted that he has not seen I.K.G., but he has purportedly tried to provide for I.K.G. According to J.G., C.S. declined to take money from J.G. and T.B., stating that "she has everything under control."

---

[3] The purported written agreement was not made a part of this record.

J.G. later clarified that he has seen I.K.G. once a month since he was born. Both J.G. and T.B. asserted that they want joint custody with C.S. and that they are "not trying to take him from [C.S.] because he has been there his whole life. I just want to be able to have him too, you know, and that's it."

The first *Holley* factor contemplates the desires of the child. *See Holley*, 544 S.W.2d at 372. At the time of the hearing, I.K.G. was not yet three years old. "When children are too young to express their desires, the factfinder may consider whether the children have bonded with the [placement], are well-cared for by them, and have spent minimal time with a parent. *In re S.R.*, 452 S.W.3d 351, 369 (Tex. App.—Houston [14th Dist.] 2014, pet. denied). Here, C.S. testified that she is responsible for the safety and stability of I.K.G. and that she treats him as if he is one of her own children. There is no evidence that I.K.G. has been mistreated while in C.S.'s care and custody. However, there is conflicting evidence regarding how frequently J.G. and T.B. have seen I.K.G. Indeed, J.G. testified that he had not seen I.K.G. since birth, but he later clarified that he sees I.K.G. once a month.

With regard to the second, third, and seventh factors, we note that "[t]he need for permanence is a paramount consideration for a child's present and future physical and emotional needs." *In re J.G.S.*, 550 S.W.3d 698, 705 (Tex. App.—El Paso 2018, no pet.). As stated earlier, the trial court heard testimony that C.S. has cared for I.K.G. since birth and that J.G. and T.B.'s presence in I.K.G.'s life is not consistent. *See* TEX. FAM CODE ANN. §

153.373 (providing that the presumption that a parent should be appointed or retained as managing conservator of the child is rebutted if the court finds that "the parent has voluntarily relinquished actual care, control, and possession of the child to a nonparent . . . for a period of one year or more, a portion of which was within 90 days preceding the date of intervention in or filing of the suit" and appointment of the nonparent is in the best interest of the child).

The fourth factor concerns the parenting abilities of the parents. *See Holley*, 544 S.W.2d at 372. The record reflects that the Department had filed petitions to terminate the parental rights of both J.G. and T.B. as to I.K.G. and another child. The Department nonsuited its termination petition as to I.K.G. only after J.G. and T.B. relinquished custody of I.K.G. to C.S. Moreover, C.S. testified that both J.G. and T.B. have a history or pattern of neglect, which necessitated intervention by the Department.

With regard to the sixth factor, neither J.G. nor T.B. provided detailed plans for taking custody of I.K.G. *See id.* Rather, they merely asserted that they would agree to joint custody with C.S., as has been the case for the approximately three years preceding the hearing in this matter.

The eighth and ninth factors pertain to any acts or omissions on the part of the parent that may indicate the existing parent-child relationship is not a proper one, and whether there are any excuses for those acts or omissions. *Id.* J.G. and T.B. relinquished custody of I.K.G. to C.S. because of pending petitions to terminate their parental rights

filed by the Department. C.S. explained that J.G. and T.B. engaged in a pattern of neglect that necessitated Department intervention. Neither J.G. nor T.B. provided any excuse or explanation for the neglect allegations.

Because no *Holley* factor weighs in J.G. or T.B.'s favor, we cannot conclude that the trial court abused its discretion by refusing to appoint C.S. as sole managing conservator and J.G. and T.B. as possessory conservators of I.K.G. *See Compton*, 428 S.W.3d at 886; *see also* TEX. FAM. CODE ANN. § 153.373. As such, we overrule J.G. and T.B.'s first issue.

**Visitation and the Trial Court's Permanent Injunction**

In their second issue, J.G. and T.B. contend that the trial court abused its discretion by naming them possessory conservators and limiting access to I.K.G. through supervised visitation without any evidence of impairment or danger to I.K.G.'s physical health or emotional development.

We have already concluded that the trial court did not abuse its discretion by naming J.G. and T.B. possessory, rather than managing, conservators. Thus, in this issue, we need only address J.G. and T.B.'s complaints about the portion of the trial court's order pertaining to supervised visitation.

The public policy of Texas is to ensure that children enjoy "frequent and continuing contact with parents who have shown the ability to act" in their child's best interest. TEX. FAM. CODE ANN. § 153.001(a). There is a rebuttable presumption that the standard possession order "(1) provides reasonable minimum possession of a child for a

parent named as a possessory conservator or joint managing conservator; and (2) is in the best interest of the child." *Id.* § 153.252. However, a trial court is permitted to place conditions on a parent's access, such as supervised visitation, if necessary for the child's best interest. *See id.* §§ 153.193, 153.256; *see also In re R.D.Y.*, 51 S.W.3d 314, 324 (Tex. App.—Houston [1st Dist.] 2001, pet. denied) (noting that trial courts are permitted to place conditions on a parent's visitation if necessary for the child's best interest). There is also "a rebuttable presumption that it is not in the best interest of a child for a parent to have unsupervised visitation with the child if credible evidence is presented of a history or pattern of past or present child neglect or physical or sexual abuse by that parent directed against the other parent, a spouse, or a child." TEX. FAM. CODE ANN. § 153.004(a). The terms of an order restricting a parent's right of possession of or access to a child may not exceed those that are required to protect the best interest of the child. *See id.* § 153.193.

On appeal, J.G. and T.B. complain that,

[f]our hours a month supervised is not ample time to maintain any type of relationship. Also with the visits being supervised at appellee[']s home by Appellee[,] it does not allow I.K.G. to ever interact with or know any of his immediate or extended family or his siblings. It eliminates him spending any holidays with anyone in his family.

Texas courts have repeatedly held that limited visitation does not amount to deprived visitation. *See Niskar v. Niskar*, 136 S.W.3d 749, 756 (Tex. App.—Dallas 2004, no pet.) ("When a trial court denies a parent overnight visitations with the child, it has not

denied the parent's visitation rights."); *Beaupre v. Beaupre*, 700 S.W.2d 353, 354-55 (Tex. App.—Fort Worth 1985, writ dism'd) (holding that a visitation provision that temporarily limited appellant's access did not constitute denial of access); *see also Malekzadeh v. Malekzadeh*, No. 14-05-00113-CV, 2007 Tex. App. LEXIS 5178, at *44 (Tex. App.—Houston [14th Dist.] July 3, 2007, pet. denied) (mem. op.) ("[W]e note that by restricting appellant's visitation with and possession of the child, the trial court has not denied appellant his rights as parent." (citation & internal quotation marks omitted)).

Given the evidence outlined in the preceding *Holley* analysis, which supports the trial court's finding that "credible evidence has been presented that there is a history or pattern of neglect committed by [T.B.] and [J.G.]," we cannot conclude that the trial court abused its discretion by placing conditions on J.G. and T.B.'s access to I.K.G. by virtue of supervised visitation. *See In re P.A.C.*, 498 S.W.3d 210, 219 (Tex. App.—Houston [14th Dist.] 2016, pet. denied) (stating that a trial court does not abuse its discretion in restricting a parent's possession and access to a child when the record contains evidence to support a finding that such restrictions are in the best interest of the child). Accordingly, we overrule J.G. and T.B.'s second issue.[4]

---

[4] J.G. and T.B. also complain in this issue about lack of notice of the hearing that resulted in the complained-of order. First, we note that this complaint is multifarious and may be disregarded. *See In re S.K.A.*, 236 S.W.3d 875, 894 (Tex. App.—Texarkana 2007, pet. denied) (observing that a multifarious issue or point of error is one that raises more than one specific ground of error); *see also Rich v. Olah*, 274 S.W.3d 878, 885 (Tex. App.—Dallas 2008, no pet.) (stating that courts may disregard any assignment of error that is multifarious). Second, by appearing at the hearing without objection, any complaint regarding notice was waived. *See* TEX. R. CIV. P. 245; *see also Keith v. Keith*, 221 S.W.3d 156, 163 (Tex. App.—Houston [1st Dist.] 2006, no pet.). As such, we conclude that these complaints lack merit.

**J.G. and T.B.'s Remaining Issues**

In their third and fourth issues in their opening brief, J.G. and T.B. complain about the trial court's child-support order and that the trial court erred by holding a final prove-up hearing without the parties stating they were in agreement and without holding another hearing. Although these issues are listed in the issues presented section of their brief, J.G. and T.B. did not provide any argument or authority in support of these issues. J.G. and T.B.'s failure to cite legal authority or provide substantive analysis of the legal issues in this direct appeal results in the waiver of the complaints. *See* TEX. R. APP. P. 38.1(i); *see also Fredonia State Bank v. Gen. Am. Life Ins. Co.*, 881 S.W.2d 279, 284 (Tex. 1994) (observing that error may be waived by inadequate briefing).

We recognize that J.G. and T.B. briefly mentioned the child-support order in their reply brief. However, an issue raised for the first time in a reply brief is ordinarily waived and need not be considered. *See* TEX. R. APP. P. 38.3; *see also In re Roy*, 249 S.W.3d 592, 595 (Tex. App.—Waco 2008, pet. denied) (citing *Zamarron v. Shinko Wire Co.*, 125 S.W.3d 132, 139 (Tex. App.—Houston [1st Dist.] 2003, pet. denied)). Moreover, J.G. and T.B. failed to cite any legal authority in support of the complaint pertaining to the child-support order. *See* TEX. R. APP. P. 38.1(i); *see also Fredonia State Bank*, 881 S.W.2d at 284; *Tello v. Bank One, N.A.*, 218 S.W.3d 109, 116 (Tex. App.—Houston [14th Dist.] 2007, no pet.) (noting that "we know of no authority obligating us to become advocates for a particular litigant through performing their research and developing their argument for them" (internal quotation

omitted)).  We conclude that these issues were inadequately briefed, and therefore, present nothing for our review.  Accordingly, we overrule J.G. and T.B.'s third and fourth issues.

## Conclusion

Having overruled all of J.G. and T.B.'s issues on appeal, we affirm the judgment of the trial court.

STEVE SMITH
Justice

Before Chief Justice Gray,
     Justice Johnson, and
     Justice Smith
(Chief Justice Gray concurring with a note)*
Appeal affirmed and order dissolved
Opinion delivered and filed February 15, 2023
[CV06]

*(Chief Justice Gray concurs in the Court's judgment as it relates to the trial court's January 7, 2022 judgment.  A separate opinion will not issue.)

