**Affirmed in Part, Reversed and Remanded in Part, and Opinion filed December 21, 2023.**



In The

# Fourteenth Court of Appeals

---

### NO. 14-22-00372-CV

---

### DEBRA BOOTHE, Appellant

### V.

### ZEDDIE BOOTHE, Appellee

---

**On Appeal from the 505th District Court
Fort Bend County, Texas
Trial Court Cause No. 19-DCV-261361**

---

### O P I N I O N

Debra Boothe appeals from the final decree of divorce terminating her marriage to Zeddie Boothe. The trial court found that Debra committed fraud on the community and wasting of community assets and that she owed reimbursement to the community. Taking those factors into account, as well as Zeddie's attorney's fees, the trial court awarded the entirety of the known community estate to Zeddie. The trial court also denied Debra's request for spousal maintenance. In two issues

on appeal, Debra contends that the evidence was insufficient to support the trial court's awarding of the entire community estate to Zeddie and that the court abused its discretion in denying her request for spousal maintenance. Concluding that the trial court erred in its division of the community estate, we reverse and remand that portion of the decree for a new division of property and affirm the remainder of the judgment, including the denial of spousal maintenance.

## *Background*[1]

Although there was some disagreement between the parties regarding an earlier ceremony, the trial court found that Zeddie and Debra were married in March 1989, and such finding is not challenged on appeal. The trial court also found that the couple stopped living together as spouses around June 1995. The couple had three children together. The youngest child, Jasmine, emancipated on June 26, 2010. However, the record contains a Default Order in Suit for Modification of Child Support Obligation, dated November 10, 2015, which ordered Zeddie to pay $840 a month in child support for Jasmine indefinitely due to a purported disability. In the proceedings currently before us, the trial court found that there was no credible evidence to substantiate that Jasmine was or ever had been disabled and that credible evidence disproved any such disability.

At trial, Debra testified that other than the clothes on her back and in her closet, she did not own anything. She did not present any other evidence regarding community or separate property and did not testify as to any debts.[2] Zeddie

---

[1] We have reviewed the record, but we also accept as true the facts stated in appellant's brief to the extent supported by record citation because appellee failed to file a brief. *See* Tex. R. App. P. 38.1(g); *Jackson v. Cain-Stegemoller*, No. 14-18-00207-CV, 2019 WL 3724988, at *1 n.1 (Tex. App.—Houston [14th Dist.] Aug. 8, 2019, no pet.). The State, which was also a party due to an alleged child support arrearage, has expressly waived its right to file a brief.

[2] Debra's attorney represented that he had documentation of some nature at the trial, but he was unable to get it admitted into evidence. No issues regarding the excluded evidence are

2

testified and presented a proposed property division showing that he possessed community property valued at $446,232.32 and owed community debts of $12,100, for a positive total of $434,132.32. Zeddie's proposed property division showed Debra as possessing no community property and owing no community debts. The community property listed for Zeddie included vehicles, bank accounts, and retirement accounts.

The trial court concluded that Zeddie "should be awarded a disproportionate share of the parties' estate due to the following reasons: actual or constructive fraud committed by Debra Boothe, wasting of community assets, reimbursement, and attorneys' fees to be paid." The only specific finding the trial court made regarding any of these allegations was that Debra "continued to collect $840.00 per month in child support from Petitioner until September 2021 based on false claims that Jasmine Boothe was disabled." Among other things in its final decree, the trial court dissolved the parties' marriage, terminated Zeddie's child support obligation, awarded each side the community property that was in their possession or under their control (effectively awarding Zeddie the entirety of the proven community estate except for Debra's clothes) as well as the liabilities they had incurred, and ordered each side to pay their own attorney's fees. The trial court also denied Debra's request for spousal maintenance.

Among other things, Zeddie testified at trial that the couple separated in 1995 because Debra was squandering money and had stolen a couple of his checkbooks and was writing checks without his knowledge. He said that she was using the money to throw parties for the neighborhood. He further alleged that he and Debra had operated a daycare for a time, but Debra used the business to steal clients' social security numbers for her own benefit. Zeddie asked that the

raised in this appeal.

3

community estate be reimbursed for what he called Debra's fraudulent conduct. He did not, however, suggest any specific amount by which the community estate had allegedly been diminished by such conduct. Alternatively, he asked to be awarded a disproportionate share of the community estate. Zeddie asserted that the couple had lived apart since the agreed separation, but he had not filed for divorce in the intervening 27 years because he wanted his children to know that he was not abandoning them.

Zeddie stated that Jasmine was 29 years old at the time of trial, and although he initially stopped paying child support when she turned 18, he was told to start paying again when she allegedly went to college. He subsequently received an order stating that he did not have to keep paying child support, and, in fact, he received a reimbursement. However, new child support proceedings resulted in a default order against him in late 2015 when Debra alleged that Jasmine was disabled and mentally unstable. Zeddie said, however, that Jasmine is not disabled and Debra defrauded the court and him. He explained that Jasmine has worked since she turned 18, got her GED in 2010, is married, and can and does support herself. He said that he had paid $840 a month since 2015 in child support for Jasmine. He alleged the money was not, in fact, used for Jasmine. He said that he and Jasmine had tried to rectify the situation, but the attorney they contacted wanted too much money. Although the default child support order states that Zeddie was duly notified, he contended at trial that he was not served with notice for those proceedings and that notice was sent to the wrong address. He only found out about the order later from the human resources department of his employer. He asked that the funds be reconstituted back into the community estate and counted against Debra in the division of the estate.

The trial court made no finding and Zeddie offered no testimony regarding

the total amount of child support that he erroneously paid based on the disability claim. However, the default order provided that he was to pay $840 a month in child support starting September 18, 2014, and the court below found that the payments ended in September 2021. Assuming Zeddie made 85 months of payments, this equates to $71,400. But there was also evidence that Zeddie was in arrears on the payments by $5,208.21, apparently because the default order had been retroactive and he never made the retroactive payments. The amount Zeddie actually paid was therefore less than $71,400.[3] Although Zeddie also testified at one point that he had made a total of $115,000 in child support payments for Jasmine since her emancipation, as stated, he acknowledged that he had already received a reimbursement for the amounts he allegedly paid because she was in college.

When specifically asked about his fraud claims against Debra, Zeddie identified her taking money without his knowledge (presumably the allegedly stolen checks) and the alleged receipt of child support under false pretenses. He told the court that he was asking for the division shown in exhibit P-2, which showed everything being awarded to Zeddie. He asserted that Debra has made zero contribution to the community estate, but he suggested without specifics that her father may have left her some property. Regarding Debra's spousal maintenance claim, Zeddie testified that Debra had not been a spouse to him in 27 years. He did not believe she was entitled to spousal maintenance because they had each been supporting themselves. He asserted that his attorney's fees in the case totaled $48,000.

Zeddie said he thought Debra was in pretty good shape and her vision was

---

[3] We say less than $71,400 rather than simply deducting the amount of the arrears that Zeddie never paid because the amount given for the arrears likely included interest that should not be subtracted from the amount of the payments he actually made.

5

fine, but she just chose not to work. He explained that she worked when they operated a daycare from 1989 to 1991, and she worked at another daycare during the same period. He stated that the couple was filing separate tax returns but she once filed his tax return and then kept the refund. He reported the matter, but he says he was told she could do it because she was his wife. He did not state how much money was involved. He said that although he wants Debra to receive none of his retirement funds, she might be entitled to 20 percent of the funds that he earned between 1989 and 1995, the period when they were actually living together.

The trial court found that Debra's "testimony throughout the trial was inconsistent and void of credibility." In her testimony, Debra asserted that she was legally blind and had been blind since birth. She receives monthly social security disability checks of $742. She stated that she married Zeddie in 1986 and they became separated in 2013. According to Debra, Jasmine still requires care and supervision and Debra provides it; she also provides Jasmine a place to live and helps with her children. She explained that Jasmine has sickle cell anemia and learning disabilities and is unable to provide for herself. Debra admitted that she had no proof that Jasmine had limited mental capacity.

Debra was previously arrested for writing a bad check. She said that she has not applied for jobs because she cannot work due to her poor vision and numerous health issues that include high blood pressure, a blockage near her heart, a tumor in her head, depression, and anxiety. She also said that she has a learning disability and lacks any education or training that could help her get a job. She insisted she could not provide for herself without spousal maintenance. She lives with Jasmine and another daughter and helps with the other daughter's mortgage. She denied living off the child support payments and said her mother and uncle were paying for her attorney.

Debra explained that during the marriage, Zeddie was "in and out" and was not helping pay bills, so sometimes their power would get cut off. According to Debra, Zeddie never voluntarily helped with their three children, and she had to depend on her parents for help. She said that when he would leave, they would have to move because they could not pay the rent. Zeddie did not appear for child support hearings in 1998, 2003, 2008, or 2015, even though she told him the dates. She said he spent money on the sons he fathered with other women. She denied improperly taking money from Zeddie, stealing his checks, or filing his tax return. She asserted that Zeddie told her she should stay home and take care of the children. She also said that she contributed to the marital estate by cooking, cleaning, washing clothes, and taking care of the children. Debra insisted she did not own any property or furniture or really anything of value except clothing, and she denied receiving any inheritance from her father.

Zeddie's niece, Taurus Lee, testified that Jasmine was independent and supporting herself financially, and Lee had not known Jasmine to live with Debra since Jasmine got married. She said that Jasmine has neither displayed any signs of mental instability nor received any money from Debra as support. Lee described Debra as untrustworthy and said that Debra probably could not stay with a relative because she could not be trusted. Lee had not known Debra to work except for the brief period where she ran a daycare.

In closing argument, Zeddie's attorney alleged that Debra had committed actual and constructive fraud by seeking child support for a nondisabled adult child, and the attorney asked the court to reconstitute the estate by adding the amount of those payments back into the estate and awarding Zeddie a disproportionate share. She also requested the court award Zeddie attorney's fees. She concluded by asking that the court order the proposed division in exhibit P-2,

which showed the entirety of the community estate going to Zeddie. In his closing argument, Debra's attorney asserted she had not committed fraud but merely provided documents to the attorney general's office, which sought the continuing child support. He also alleged Zeddie had wasted community funds through his numerous affairs and fathering children outside the marriage. And he cited Debra's alleged disability and other health issues. As stated above, the trial court awarded Zeddie the entirety of the known community estate, citing "actual or constructive fraud . . . , wasting . . . , reimbursement, and attorneys' fees."

### *Property Division*

In her first issue, Debra challenges the trial court's award of the entire community estate to Zeddie. We will begin our analysis by setting out the law governing division of the community estate in a divorce decree before turning to the trial court's findings, Debra's arguments, and the evidence. We conclude that the trial court erred in its division of the community estate.

**Governing law.** In a divorce decree, the trial court shall order a division of the parties' community estate "in a manner that the court deems just and right, having due regard for the rights of each party and any children of the marriage." Tex. Fam. Code § 7.001; *Barnett v. Barnett*, 67 S.W.3d 107, 111 (Tex. 2001). Trial courts have wide discretion in determining a just and right division. *Schlueter v. Schlueter*, 975 S.W.2d 584, 589 (Tex. 1998). When circumstances justify, this standard may result in a disproportionate division of assets and liabilities. *Id*. at 589–90. Indeed, the property division need not be equal; however, it must be equitable, and there must be some reasonable basis for an unequal division of the property. *E.g.*, *Murff v. Murff*, 615 S.W.2d 696, 698–99 (Tex. 1981); *Gordon v. Gordon*, No. 14-10-01031-CV, 2011 WL 5926723, at *7 (Tex. App.—Houston [14th Dist.] Nov. 29, 2011, no pet.) (mem. op.). Among the factors a trial court

may consider in making an unequal division are the spouses' earning capacities, disparity of income and abilities, education, business opportunities, relative physical condition, relative financial condition, disparity of ages, size of separate estates, nature of the property, and the benefits that the spouse who did not cause the breakup of the marriage would have enjoyed had the marriage continued. *Murff*, 615 S.W.2d at 698–99; *In re Marriage of Rangel & Tovias-Rangel*, 580 S.W.3d 675, 682 n.4 (Tex. App.—Houston [14th Dist.] 2019, no pet.). Although fault in the breakup of the marriage may be considered, the division of property should not serve to punish the party at fault. *Bradshaw v. Bradshaw*, 555 S.W.3d 539, 543–45 (Tex. 2018).

Claims for waste, fraudulent transfer of community property, or other damage to community property belong to the community itself and also may be considered in the trial court's division. *See Chu v. Hong*, 249 S.W.3d 441, 444–45 (Tex. 2008); *see also Schlueter*, 975 S.W.2d at 589; *K.T. v. M.T.*, No. 02-14-00044-CV, 2015 WL 4910097, at *12 (Tex. App.—Fort Worth Aug. 13, 2015, no pet.) (mem. op.) ("In addition, a court may consider one spouse's wrongful dissipation of community assets."); *Smith v. Smith*, 143 S.W.3d 206, 213 (Tex. App.—Waco 2004, no pet.) (listing 14 factors Texas courts have considered in ordering a disproportionate division).

Reimbursement is an equitable right that arises when the funds or assets of one estate are used to benefit and enhance another estate without the first estate receiving some benefit. *Marriage of O'Brien*, 436 S.W.3d 78, 82 (Tex. App.—Houston [14th Dist.] 2014, no pet.). Waste, or constructive fraud, is one form of fraud on the community that occurs when a spouse wrongfully depletes the community estate of assets without the other spouse's knowledge or consent. *See In re Marriage of Walzel*, No. 14-16-00637-CV, 2018 WL 614767, at *3–4 (Tex.

App.—Houston [14th Dist.] Jan. 30, 2018, no pet.) (mem. op.) (citing *Schlueter*, 975 S.W.2d at 589); *see also Cantu v. Cantu*, 556 S.W.3d 420, 427 (Tex. App.—Houston [14th Dist.] 2018, no pet.) ("Fraud is presumed whenever one spouse disposes of the other spouse's one-half interest in community property without that other spouse's knowledge or consent."). Waste requires disposal of community assets for non-community purposes. *Giesler v. Giesler*, No. 03-08-00734-CV, 2010 WL 2330362, at *4 (Tex. App.—Austin June 10, 2010, no pet.) (mem. op.). A spouse commits actual fraud against the other spouse's interest in the community estate when the spouse transfers community property or expends community funds for the primary purpose of depriving the other spouse of the use and enjoyment of the assets involved in the transaction. *Strong v. Strong*, 350 S.W.3d 759, 771 (Tex. App.—Dallas 2011, pet. denied). A trial court also has equitable power to award either spouse attorney's fees as part of its just and right division of the marital estate. *Maxwell v. Maxwell*, No. 14-20-00298-CV, 2021 WL 4956881, at *25 (Tex. App.—Houston [14th Dist.] Oct. 26, 2021, pet. denied) (mem. op.).

**Findings and evidence.** As mentioned above, the trial court generally justified the disproportionate division based on Debra's fraud, her wasting of community assets, reimbursement, and Zeddie's attorney's fees. The only specific finding that the trial court made in support of the disproportionate division was that Debra "continued to collect . . . child support from Petitioner until September 2021 based on false claims that Jasmine Boothe was disabled." Although the trial court did not make an explicit finding as to the total amount lost from the community due to this conduct, the record indicates that the amount was less than $71,400.[4]

---

[4] As set forth above, this calculation is based on 85 months at $840 per month minus the unpaid arrearage. No contention is made in this appeal, or was made below, that the funds used to pay the child support in question were not community property. Zeddie indicated in his testimony that the money came from his earnings during the marriage, which would have been

Zeddie also testified that early in the marriage, Debra had stolen some checks and cashed them in order to throw parties for the neighborhood. Zeddie did not, however, offer any clue as to the total amount of the funds Debra expended in this fashion. And Zeddie testified that at one point, when they were filing separate tax returns, Debra filed a tax return in his name and then kept the tax refund. He said that when he reported this, he was told she could do it because she was his wife. Zeddie again did not offer any hint regarding the amount of the tax refund or what Debra may have done with it. Zeddie also testified that his attorney's fees in the case totaled $48,000, and the trial court indicated it was taking that into account in making a disproportionate division as well.

**Debra's arguments.** Debra argues that the evidence is legally and factually insufficient to support the trial court's disproportionate division. She argues more specifically that (1) there was insufficient evidence of the amount of any alleged damage to the community; (2) there was no evidence her separate estate benefitted from any community funds; (3) a trial court cannot recognize a claim for reimbursement for the payment of child support, citing Tex. Fam. Code § 3.409; (4) the attorney general's office sought the disability child support; and (5) Zeddie failed to provide expert testimony regarding the reasonableness and necessity of his attorney's fees.

The evidence, however, was sufficient to support a determination that Debra committed fraud by obtaining continuing child support on false pretenses. It was established that Debra sought and received child support based on her allegations that Jasmine was disabled, and there was substantial evidence that Jasmine, in fact, was not disabled and had never been disabled. *See, e.g.*, *Strong*, 350 S.W.3d at 771

community property. *See* Tex. Fam. Code § 3.002; *Marriage of O'Brien*, 436 S.W.3d at 84 ("[E]arnings during marriage, even during the pendency of divorce proceedings, are community property.").

11

(discussing fraud against the community). Additionally, there was evidence on which the court could have concluded that Debra committed constructive fraud or wasting against the community by cashing Zeddie's checks without his consent and using that money to throw neighborhood parties and filing his tax return and taking the tax refund without his consent, although there was no evidence of how much this conduct may have cost the community. *See Cantu*, 556 S.W.3d at 427 (discussing constructive fraud and wasting); *Walzel*, 2018 WL 614767, at *3–4 (same). *But see Kaftousian v. Rezaeipanah*, 511 S.W.3d 618, 623 (Tex. App.—El Paso 2015, no pet.) (holding disproportionate division of marital estate could not be supported by allegations where trial court did not make findings based on those allegations).[5] And, although Zeddie's attorney did not provide live testimony regarding the reasonableness and necessity of her fees, she did provide an affidavit on that issue and Zeddie did not object to the form of the evidence. *See, e.g.*, *Spencer v. Vaughn*, No. 03-05-00077-CV, 2008 WL 615443, at *13–14 (Tex. App.—Austin Mar. 6, 2008, pet. denied) (mem. op.).

**Just and right division.** The bigger issue that Debra raises is not whether there was evidence she committed fraud, constructive fraud, or wasting, but whether the trial court's division of the community estate based on this conduct—awarding Zeddie the entirety of the existing community estate—was just and right.[6] A trial court is certainly permitted to take such wrongful conduct into consideration when dividing a community estate. *See, e.g.*, *Chu*, 249 S.W.3d at 444–45; *Schlueter*, 975 S.W.2d at 589; *Debrock v. Debrock*, No. 03-21-00308-CV, 2022 WL 17970214, at *17 (Tex. App.—Austin Dec. 28, 2022, pet. denied) (mem.

---

[5] We need not and do not make a ruling as to whether the trial court considered or properly considered the evidence concerning the checks and the tax refund in resolving the issues in this appeal.

[6] There does not appear to be any evidence in the record supporting a reimbursement claim. *See O'Brien*, 436 S.W.3d at 82.

op.); *K.T.*, 2015 WL 4910097, at \*12.

Although the trial court here did not expressly provide its calculations for reconstituting the marital estate (i.e., adding the amounts wrongfully taken from the community back into the estate before making a just and right division), such calculations are not difficult. *See generally* Tex. Fam. Code § 7.009 (requiring court reconstitute estate in light of actual or constructive fraud on the community). The total positive value of the estate after subtracting liabilities also assigned to Zeddie was $434,132.32. The proven amount of losses caused by Debra's wrongful conduct was less than $71,400. Assuming the trial court reconstituted the community estate and considered $71,400 as Debra's share, the division was approximately 86% to Zeddie and 14% to Debra. Even considering that the trial court was within its discretion in factoring in Zeddie's attorney's fees in making the division and there was some evidence of additional unquantified damages related to the alleged theft of checks and a tax return, this is still a very disproportionate split. *See generally Murff*, 615 S.W.2d at 700 ("Mathematical precision in dividing property in a divorce is usually not possible."). But is it inequitable?

There is no exact threshold as to what percentage split between spouses constitutes an unfair or unjust division and thus reversible error. *See Bradshaw*, 555 S.W.3d at 547 (Devine, J., concurring). That said, a division this disproportionate is somewhat rare but not unheard of in Texas jurisprudence. *See id.*; *id.* at 551 (Lehrmann, J., dissenting). Typically, cases resulting in such a disproportionate division involve either evidence demonstrating conduct impacting a much greater percentage of the community estate than was shown here, evidence relating to one or several of the *Murff* factors, or evidence of abuse. *See, e.g.*, *Lynch v. Lynch*, 540 S.W.3d 107, 130 (Tex. App.—Houston [1st Dist.] 2017, pet.

13

denied) (collecting and describing cases with very disproportionate property divisions); *see also Simons v. Simons*, No. 11-21-00066-CV, 2023 WL 2415209, at *8 (Tex. App.—Eastland Mar. 9, 2023, no pet.) (mem. op.) (affirming award of entire marital estate to wife where husband had treated her cruelly, was at fault in the break-up of the marriage, and had sexually assaulted his step-daughter); *Christensen v. Christensen*, No. 01-16-00735-CV, 2018 WL 1747260, at *8 (Tex. App.—Houston [1st Dist.] Apr. 12, 2018, no pet.) (affirming disproportionate division based on waste, fault in the break-up of the marriage, and multiple *Murff* factors); *Ohendalski v. Ohendalski*, 203 S.W.3d 910, 915 (Tex. App.—Beaumont 2006, no pet.) (affirming 81/19 division based on findings of adultery, cruelty, waste, and *Murff* factors).

Here, as indicated, Debra's wrongful conduct was shown to impact only a relatively small percentage of the community estate and there was no evidence of any *Murff* factors that would support a disproportionate division in Zeddie's favor or that Debra was abusive. To the contrary, Zeddie was shown to be in a significantly better financial position with significantly greater earnings potential than Debra. Under these circumstances, we conclude that the trial court's division of the community estate was neither supported by a reasonable basis nor equitable and therefore constituted reversible error. *See, e.g.*, *Roberts v. Roberts*, 531 S.W.3d 224, 234 (Tex. App.—San Antonio 2017, pet. denied) (holding division was so disproportionate as to be unfair and unjust); *K.T.*, 2015 WL 4910097, at *12 (holding although evidence supported unequal division of community estate, it did not support such a disproportionate division); *Osorno v. Osorno*, 76 S.W.3d 509, 512 (Tex. App.—Houston [14th Dist.] 2002, no pet.) (holding 75/25 split was not supported by the evidence); *Blair v. Blair*, No. 14-97-00832-CV, 1999 WL 649082, at *9 (Tex. App.—Houston [14th Dist.] Aug. 26, 1999, no pet.) (not

designated for publication) (holding, even assuming right of reimbursement, property division was "grossly inequitable"). Accordingly, we must reverse the portion of the decree dividing the community estate and remand for a new division. *See Graves v. Tomlinson*, 329 S.W.3d 128, 153 (Tex. App.—Houston [14th Dist.] 2010, pet. denied) ("[O]nly the trial court may make a just division of community property.").

### *Spousal Maintenance*

In her second issue, Debra asserts that the trial court abused its discretion in denying her request for spousal maintenance. Chapter 8 of the Family Code governs the awarding of spousal maintenance in a divorce decree. Tex. Fam. Code §§ 8.001-.359; *see also Dalton v. Dalton*, 551 S.W.3d 126, 130 (Tex. 2018) ("In 1995, the Texas Legislature first authorized courts to award a form of involuntary post-divorce alimony referred to as 'spousal maintenance.'"). The Code defines "maintenance" as "an award in a suit for dissolution of a marriage of periodic payments from the future income of one spouse for the support of the other spouse." Tex. Fam. Code § 8.001(1).

The Code authorizes trial courts to award spousal maintenance in "very limited circumstances" if the parties meet certain eligibility requirements. *Dalton*, 551 S.W.3d at 130. Among the possibilities stated in the statute, a spouse may be eligible if they lack sufficient property, including separate property, on dissolution of the marriage to provide for their minimum reasonable needs, and either (1) has been married to the other spouse for at least 10 years and lacks the ability to earn sufficient income to provide for her minimum reasonable needs, or (2) is unable to earn sufficient income to provide for their minimum reasonable needs because of an incapacitating physical or mental disability. Tex. Fam. Code § 8.051. If the spouse is determined to be eligible for maintenance, the court must then determine

the nature, amount, duration, and manner of the payments by considering certain listed factors. *Id.* § 8.052.

The party seeking spousal maintenance bears the burden to establish the requirements of the statute. *See, e.g.*, *Marin v. Marin*, No. 03-22-00013-CV, 2023 WL 2776296, at *2 (Tex. App.—Austin Apr. 5, 2023, no pet.) (mem. op.); *Cooper v. Cooper*, 176 S.W.3d 62, 65 (Tex. App.—Houston [1st Dis.] 2004, no pet.). We review a trial court's denial of spousal maintenance for an abuse of discretion. *See, e.g.*, *W.D. v. R.D.*, No. 02-18-00328-CV, 2019 WL 2635563, at *8 (Tex. App.—Fort Worth June 27, 2019, no pet.) (mem. op.); *Fuentes v. Zaragoza*, 555 S.W.3d 141, 171 (Tex. App.—Houston [1st Dist.] 2018, no pet.). We will reverse the trial court's order only if we determine, from reviewing the record as a whole, that the decision was arbitrary and unreasonable. *Coble v. Adams*, No. 01-13-00562-CV, 2014 WL 6602480, at *1 (Tex. App.—Houston [1st Dist.] Nov. 20, 2014, no pet.) (mem. op.). We view the evidence in the light most favorable to the trial court's decision and indulge every legal presumption in favor of its judgment. *Id.*

It is uncontested that Zeddie and Debra were married for well over 10 years. Debra further asserts that she is legally blind and unable to work due to that disability and that she also suffers from several health issues and a learning disability. She maintains that her only source of income is a $742 monthly social security disability payment and that she owns nothing except her own clothes. The only support in the record that Debra references for these assertions is her own testimony, which the trial court found to be thoroughly "inconsistent and void of credibility." In a trial to the bench, such as this, the trial court is the sole judge of witness credibility and the weight to be assigned to testimony. *See Saba Zi Expl., L.P. v. Vaughn*, 448 S.W.3d 123, 131 (Tex. App.—Houston [14th Dist.] 2014, no pet.). Debra's attorney was unable to get any documentary evidence into the record

16

to support her claims regarding her disabilities, health issues, inability to earn a living, and lack of property. Although, as discussed above, there is some evidence from Zeddie indicating Debra did not possess any community property, Debra does not cite any evidence beyond her own testimony in support of her claims.

Zeddie testified that he thought Debra could see pretty well, and he was not aware of any other health issues she might have. He also noted that she had either worked for or operated a daycare for a couple of years. He believed that she was "in good shape" but just chose not to work. Additionally, under cross-examination, Debra acknowledged that she would only need about $303 a month in addition to her disability payments to meet her minimum reasonable needs. *See* Tex. Fam. Code § 8.051; *see also Trueheart v. Trueheart*, No. 14-02-01256-CV, 2003 WL 22176626, at *2 (Tex. App.—Houston [14th Dist.] Sept. 23, 2003, no pet.) (mem. op.) (explaining that the Code does not define the term "minimum reasonable needs" and deciding what a particular person's needs are is a fact-specific determination that should be made by the trial court on a case-by-case basis).

Although the trial court did not state an express finding as to why it denied the spousal maintenance request, it may have reasonably concluded that Debra failed to meet her burden to establish either that she lacked sufficient property to provide for her minimum reasonable needs or that she lacked the ability to earn sufficient income to provide for her minimum reasonable needs. *See* Tex. Fam. Code § 8.051; *see also J.F. v. J.F.*, No. 02-19-00029-CV, 2020 WL 4248681, at *4 (Tex. App.—Fort Worth July 23, 2020, pet. denied) (mem. op.) (collecting cases where spouse asserting disability or health issues failed to meet burden for spousal maintenance). We therefore overrule Debra's second issue.

### *Conclusion*

We reverse the portion of the final decree of divorce that divides the marital

17

estate and remand that issue to the trial court for further proceedings. We affirm the remainder of the divorce decree.


/s/      Frances Bourliot
          Justice


Panel consists of Justices Bourliot, Hassan, and Poissant.