# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

### NO. 03-23-00299-CV

---

**Matthew David Isam, Appellant**

**v.**

**Alyssa Nicole Isam, Appellee**

---

### FROM THE 453RD DISTRICT COURT OF HAYS COUNTY
### NO. 20-2113, THE HONORABLE JOE POOL, JUDGE PRESIDING

---

### M E M O R A N D U M   O P I N I O N

Alyssa Nicole Isam sought a divorce from Matthew David Isam and requested that the court terminate his parental rights to their four children. After a trial at which Matthew[1] failed to appear, the court rendered a default judgment of divorce. In the divorce decree, the court terminated Matthew's parent-child relationship with the four children and divided the community estate. In two issues on appeal, Matthew contends that (1) the trial court abused its discretion in its division of the community estate and (2) there was insufficient evidence to support terminating his parental rights.[2] We will affirm in part and reverse and remand in part.

---

[1]  Because the parties share a surname, we refer to them by their given names for clarity.

[2]  Matthew does not challenge the portion of the trial court's divorce decree dissolving his marriage to Alyssa.

# BACKGROUND

Alyssa and Matthew married in 2006 and are the parents of four children. In September 2020, Alyssa filed a divorce petition and Matthew, appearing pro se, filed his original answer. In November 2021, Art Guzman, the children's court-appointed guardian ad litem tasked with drafting "a graduated possession schedule that took into consideration [Matthew's] drug-related arrest," filed a report. In his report, Guzman stated that he had spoken to Alyssa and Matthew. Alyssa stated that the children did not see Matthew very much and that he did not make attempts to see them. Alyssa stated that she was employed as a teacher, that she receives no child support or any assistance from Matthew, and that she receives government assistance to provide for the children. Guzman reported that he and Matthew discussed pending charges against Matthew for possession of a controlled substance. Guzman stated that he explained to Matthew that he was drafting a graduated possession order and would require that Matthew undergo a hair follicle test to provide information about his drug use, if any. Guzman stated that he asked Matthew about his employment and that Matthew responded that, although unemployed, he "bought and sold things" and that he occasionally worked for a wealthy relative in Austin. Guzman reported that Matthew confirmed that he had a college degree in journalism but had never worked in that field. Guzman also reported that he had communicated with Matthew by email and was "disappointed in the lack of engagement he showed." Guzman stated that Matthew would take days to respond to emails and had not taken a hair follicle test despite knowing that the test "was important to seeing his children on a stair-step schedule." Guzman recommended that the court consider not permitting Matthew to have contact with the children until he completed a ten-week parenting class and have a stair-step possession schedule

2

predicated on negative drug tests. Guzman also recommended that the two older children have an opportunity to opt out of Matthew's periods of possession.

Guzman filed a second report with the court in January 2022. In this report, Guzman stated that he had met with Alyssa and Matthew and Matthew's counsel in November 2021 as directed by the court to attempt to facilitate a settlement. Guzman reported that Matthew's counsel stated that he needed more information from Alyssa before negotiating any settlement. Specifically, Matthew's counsel inquired about the value of Alyssa's retirement account with the Texas Teacher's Retirement System. Guzman reported that Alyssa became angry and asked if Matthew really intended to "go after her retirement when he had not been employed throughout their marriage and she had carried all of the financial weight." Guzman also reported that neither Matthew nor his attorney had an answer as to why Matthew had failed to take a hair follicle test as requested several months previously. Guzman reported that since November 2021, neither Matthew nor his attorney had been cooperative in reaching a settlement nor had Matthew undergone a hair follicle test. Additionally, Guzman reported that, at Alyssa's request, police had searched for and found a tracking device under the dashboard of her vehicle that Alyssa believed was installed by Matthew. Guzman advised Alyssa to seek "private counsel and/or a stalking protective order" because she had expressed fear for the well-being of herself and the children. Guzman also reported that he had concern for the safety and welfare of the children.

In June 2022, the court, on its own motion, consolidated the divorce proceedings with conservatorship proceedings Alyssa instituted in 2022. At that time, Alyssa and Matthew were both represented by counsel and Guzman continued his appointment as the children's guardian ad litem. On October 3, 2022, Alyssa amended her petition and sought to be named the

3

children's sole managing conservator and requested that the court order Matthew to exercise possession of and access to the children under the supervision of a professional observer. The court appointed Guzman as the children's amicus attorney and directed him to provide legal services necessary to assist the court in protecting the children's best interests. Alyssa amended her petition again on October 7, 2022 and sought an order terminating Matthew's parental rights to the four children on the grounds that he (1) voluntarily left the children alone or in the possession of another without providing adequate support and remained away for a period of at least six months, (2) engaged in conduct that endangers the physical or emotional well-being of the children, and (3) failed to support the children financially during a period of one year ending within six months of the date of the filing of the petition seeking termination of parental rights. *See* Tex. Fam. Code § 161.001(b)(1)(C), (E), (F).

On January 17, 2023, Alyssa set the case for a bench trial on the merits to be held on February 21, 2023. Alyssa served Matthew's attorney with notice of the trial setting. Alyssa attended the hearing, accompanied by her counsel; Guzman attended the hearing on behalf of the children; but neither Matthew nor his attorney attended the hearing.[3] Alyssa was the only witness who testified at the hearing. Alyssa testified that she and Matthew separated in November 2020 and the last time Matthew saw the children was Christmas 2021. Matthew was permitted to visit with the children for eight hours but showed up for only the last 15 minutes. Before that, Matthew had visited with the children for one-and-a-half hours of an eight-hour visitation period at Thanksgiving. Alyssa stated that, before they separated, Matthew frequently

---

[3] Although there is nothing in the record to explain Matthew's and his attorney's absence from the final hearing, in his briefing to this Court Matthew states that his attorney had become "completely uncommunicative" with him and, consequently, Matthew was not aware of the trial setting. Matthew acknowledged, however, that notice of the hearing was properly served on his attorney of record.

left her and the children at their home and went to stay at his aunt's house, with his mother, or at hotels. Alyssa testified that Matthew never provided her or the children any support and had been unemployed during the entire marriage. Alyssa stated that, throughout the marriage, Matthew both used and sold marijuana, methamphetamine, cocaine, and heroin. Alyssa described Matthew's criminal history, including felony charges for possession of marijuana, methamphetamine, and other controlled substances in Hays and San Patricio counties, as well as a 2022 charge for assault causing bodily injury in Hays County. Certified copies of Matthew's criminal records were admitted into evidence at the hearing.

Alyssa also testified about Matthew's mental health issues and stated that Matthew had told her many times that he planned to kill himself. She stated that on one occasion he tied belts to a closet rod and was threatening to kill himself. The court admitted a photo of a closet into evidence, which Alyssa stated was taken in 2013 when Matthew was severely depressed and suicidal. Alyssa explained that she found Matthew in the closet tying belts together to the closet clothes rod and that she had to "coax him out." Alyssa stated that Matthew had been physically abusive to her during the marriage, and the trial court admitted into evidence photos of injuries to her face and arms that she testified were inflicted by Matthew. Alyssa testified that she had reported the physical abuse to law enforcement one time but that only caused the abuse to increase. Alyssa stated that Matthew physically abused her when she was pregnant in 2010 and, after she called law enforcement to report the abuse, "it got worse at home." Alyssa testified that Matthew physically abused her again when she was pregnant in 2017. Alyssa stated that Matthew engaged in stalking behavior and that she had found tracking devices he installed in her vehicle on more than one occasion.

5

The trial court admitted into evidence a "suicide note" from Matthew that he put in Alyssa's bathroom in 2015. In the note, Matthew declares that Alyssa is the "love of my life," states that he "wished for us to have the best marriage," but that he was "too far gone for repair." Matthew stated in the note that he had "made mistakes and that [Alyssa] and the kids deserved better." Matthew's note states that he "deserves every issue for abusing my body for so long" and that he lacked "the mental or physical strength to stand a chance [] with my brain's taking over and I can't control it." Matthew's note asks: "Please don't ever tell the kids about my suicide, I have to escape the pain eventually."

With regard to the children, Alyssa stated that Matthew was emotionally abusive to them "in his punishment" and "would threaten them with a belt." Alyssa reported that Matthew had "backhanded" one of the children in the face while they were in a car together. Alyssa testified that termination of Matthew's parental rights to the four children was in their best interest and that none of the children desired to have a relationship with their father. Alyssa stated that Matthew had voluntarily left the children alone with her without providing any support and remained away for at least six months. She also testified that Matthew had failed to support the children in accordance with his ability for a period of at least one year ending within the date of her filing of her petition seeking termination of his parental rights. Alyssa stated that Matthew was a college graduate with a degree in journalism but had never worked while they were married. Alyssa testified that she believed the children's emotional and physical needs would be met if Matthew's parental rights were terminated. She stated that the older two children, aged 16 and 12, had been "around their father enough to form opinions of their own and feel strongly about the fact that their dad doesn't really want a relationship with them." Alyssa stated that it was difficult for them when it was apparent that their father did not want to

6

spend time with them and that both children see a counselor. Alyssa stated that the older boys were "ready for their little brothers to be safe" and that they "just want to protect their little brothers and not have to be in an environment that they had been in at times when [Matthew] was around," particularly because of his anger at the children.

After the hearing, the trial court dissolved Alyssa and Matthew's marriage, terminated Matthew's parental rights to the four children, and divided the community estate. The court awarded Alyssa all items in her possession or subject to her sole control, all cash in her possession or subject to her sole control, her retirement accounts, and a 2016 Chevrolet Suburban. The court awarded Matthew all items in his possession or subject to his sole control, all cash in his possession or subject to his sole control, and his retirement accounts. The trial court ordered Alyssa to pay off all credit cards or debts in her name and all debts or liabilities incurred solely by her since September 21, 2020, and ordered Matthew to pay off all credit cards or debts in his name and all debts or liabilities incurred solely by him since September 21, 2020.

Matthew filed a motion for new trial asserting generally that the evidence was legally and factually insufficient to support the court's judgment. The motion for new trial was overruled by operation of law, and Matthew perfected this appeal.

## DISCUSSION

### *Challenge to Division of Community Estate*

In his first issue, Matthew challenges the trial court's division of the community estate, arguing that the trial court's division was error because the court did not have sufficient

7

information before it to make a just and right division.[4] Although Matthew failed to appear at trial and, generally, a defendant's failure to appear is taken as admission of the factual allegations in the plaintiff's petition, *Cohen v. Bar*, 569 S.W.3d 764, 771 (Tex. App.—Houston [1st Dist.] 2018, pet. denied), this rule is "narrower" in the context of a default divorce proceeding. *Id.* A defendant's failure to appear in a divorce proceeding "is taken only as an admission of the allegations in the petition regarding residence and domicile," but such failure does not admit the material allegations in the plaintiff's petition. *Id.* at 770. When a divorce defendant defaults, the petitioner must still present evidence to support the material allegations in the divorce petition. *Vasquez v. Vasquez*, 292 S.W.3d 80, 83-84 (Tex. App.—Houston [14th Dist.] 2007, no pet.). Thus, despite Matthew's failure to appear, Alyssa still bore the burden to prove the allegations in her petition concerning the division of the community estate. *See Fuentes v. Zaragoza*, 555 SW.3d 141, 163 (Tex. App.—Houston [1st Dist.] 2018, no pet.) ("The petitioner—even in a default case—must provide sufficient evidence to permit a just and right division of the marital estate.").

In a divorce decree, the trial court shall order a division of the parties' community estate "in a manner that the court deems just and right, having due regard for the rights of each party and any children of the marriage." Tex. Fam. Code § 7.001. Each spouse bears the burden to present sufficient evidence of the value of the community estate to enable the trial court to make a just and right division. *Fuentes*, 555 S.W.3d at 162. The trial court is not required to divide the community estate equally, but it must be divided equitably. *Sandone v. Miller-Sandone*, 116 S.W.3d 204, 207 (Tex. App.—El Paso 2003, no pet.). The court may order

---

[4] Alyssa waived any briefing on this issue; her appellate brief addresses only Matthew's challenge to the court's order terminating his parental rights.

an unequal division of the estate as long as a reasonable basis for doing so exists. *Fuentes*, 555 S.W.3d at 162.

We review property division issues for an abuse of discretion, beginning with the presumption that the trial court properly exercised its discretion. *Id.* The trial court has broad discretion in making a just and right division of the community estate. *Bradshaw v. Bradshaw*, 555 SW.3d 539, 543 (Tex. 2018). "Because the standards for dividing a community estate involve the exercise of sound judgment, a trial court must be accorded much discretion in its decision." *Id.* On appellate review, legal and factual sufficiency are not independent grounds for asserting error but are instead relevant factors in assessing whether a trial court abused its discretion. *Cohen*, 569 S.W.3d at 773.

In reviewing the trial court's property division, we consider (1) whether the court possessed sufficient information upon which to exercise its discretion and (2) whether the court erred in its application of that discretion. *Id.*; *Fuentes*, 555 S.W.3d at 162; *Willis v. Willis*, 533 S.W.3d 547, 551 (Tex. App.—Houston [14th Dist.] 2017, no pet.). In a legal sufficiency review, we view all the evidence in a light favorable to the finding, crediting favorable evidence if a reasonable factfinder could and disregarding contrary evidence if a reasonable factfinder could not. *City of Keller v. Wilson*, 168 S.W.3d 802, 807 (Tex. 2005); *Cohen*, 569 S.W.3d at 773-74. In reviewing factual sufficiency, we consider all the evidence in a neutral light and set aside the finding only if the evidence is so weak as to make the finding clearly wrong and manifestly unjust. *See Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 242 (Tex. 2001) (per curiam); *Cohen*, 569 S.W.3d at 774. A trial court abuses its discretion in dividing the community estate based on the respondent's default where the record does not support the valuation and division of the estate. *Fuentes*, 555 S.W.3d at 162.

9

In her petition, Alyssa requested that the court divide the community estate "in a manner that the Court deems just and right." Alyssa filed a proposed disposition of issues, proposing that the court award her the furniture and personal property in her possession, the 2016 Chevrolet Suburban, all financial accounts held in her name, all financial accounts held in the name of any of the children, and all retirement accounts held in her name. Alyssa also proposed that the court award Alyssa and Matthew the respective debts incurred by each of them as of June 2, 2020. Alyssa did not provide a net value of the community estate as a whole or quantify the portion of the estate that she proposed each party receive. She did not provide any supporting documentation, appraisals, or financial records.

Matthew did not appear at trial. The only testimony at trial regarding the community estate was Alyssa's confirmation that she and Matthew did not own a home and her request that she and Matthew each be awarded "any accounts in [their] respective names; including checking, savings, brokerage, retirement, annuities, et cetera" and each be assigned "all debts in [their] respective names; including credit card debt and other debts." Alyssa also stated that she wanted the court to award her the "vehicle in her possession" and that she was unaware of any joint accounts held by either her or Matthew. No inventory or appraisal was offered or admitted into evidence at trial. Because the trial court had no evidence before it concerning the value of the parties' marital estate, we conclude that there is insufficient evidence in the record to support the court's property division. *See Cohen*, 569 S.W.3d at 775; *Fuentes*, 555 S.W.3d at 164-65; *Sandone*, 116 S.W.3d at 207-08. The lack of evidence regarding the value of the community estate made it impossible for the court to make an informed and equitable division of the community estate, and thus the trial court abused its discretion in

dividing the community estate. *See Fuentes*, 555 S.W.3d at 162. Consequently, we sustain Matthew's first appellate issue.

### *Challenge to Termination of Matthew's Parental Rights*

In his second issue, Matthew challenges the trial court's order terminating his parental rights, arguing that the evidence was legally insufficient to support the order. To terminate parental rights under Section 161.001, the moving party has the burden to prove by clear and convincing evidence one of the statutory predicate grounds and that termination is in the best interest of the child. *See* Tex. Fam. Code § 161.001(b)(1), (2); *In re R.R.A.*, 687 S.W.3d 269, 271 (Tex. 2024); *In re C.E.*, 687 S.W.3d 304, 308 (Tex. 2024); *In re A.V.*, 113 S.W.3d 355, 362 (Tex. 2003); *see also* Tex. Fam. Code § 161.206(a). "'Clear and convincing evidence' means the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." Tex. Fam. Code § 101.007.

"In conducting a legal-sufficiency review, the reviewing court cannot ignore undisputed evidence contrary to the finding, but must otherwise assume the factfinder resolved disputed facts in favor of the finding." *In re A.C.*, 560 S.W.3d 624, 630–31 (Tex. 2018). Legal sufficiency review of the evidence to support a termination finding requires a court to look at all the evidence in the light most favorable to the finding and consider undisputed contrary evidence to determine whether a reasonable trier of fact could have formed a firm belief or conviction that its finding was true. *Id.* at 631.

We must give due deference to the factfinder's findings, and we cannot substitute our own judgment for that of the factfinder. *In re H.R.M.*, 209 S.W.3d 105, 108–09 (Tex. 2006);

*see In re C.E.*, 687 S.W.3d at 314 (stating that factfinders are "sole arbiters of the credibility of the witnesses and the weight to give to their testimony" and "entitled to choose to believe one witness and disbelieve another with respect to the disputed facts of this case"); *In re A.B.*, 437 S.W.3d 498, 503 (Tex. 2014) (stating that when reviewing termination order, appellate courts defer to "decisions of the factfinder who, having full opportunity to observe witness testimony first-hand, is the sole arbiter when assessing the credibility and demeanor of witnesses").

**Endangerment Finding**

On appeal, Matthew challenges the legal sufficiency of the evidence to support the trial court's findings of three statutory grounds for terminating his parental rights. *See* Tex. Fam. Code § 161.001(b)(1)(C), (E), (F). We therefore review the trial court's endangerment finding—that Matthew engaged in conduct or knowingly placed the children with persons who engaged in conduct which endangered the children's physical or emotional well-being. *See id.*; *In re N.G.*, 577 S.W.3d 230, 232–33, 237 (Tex. 2019) (per curiam) (explaining that only one statutory ground is necessary to support termination of parental rights when there is also best interest finding but requiring appellate court to detail analysis in appeal challenging termination under (D) and (E) grounds because of "due process concerns, coupled with the requirement for a meaningful appeal"); *see also In re R.R.A.*, 687 S.W.3d at 279 (reviewing termination under (D) and (E) grounds "because a finding of termination under those grounds may justify termination of parental rights to other children under subsection (M)").

"'Endanger' means 'to expose to loss or injury; to jeopardize.'" *Texas Dep't of Human Servs. v. Boyd*, 727 S.W.2d 531, 533 (Tex. 1987). "Endangerment does not have to be established as an independent proposition, but can be inferred from parental misconduct alone."

12

*Pruitt v. Texas Dep't of Fam. & Protective Servs.*, No. 03-10-00089-CV, 2010 WL 5463861, at *4 (Tex. App.—Austin Dec. 23, 2010, no pet.) (mem. op.). "It is not necessary that the conduct be directed at the child or that the child actually suffer physical or emotional injury," the conduct does not have to occur in the presence of the child, and courts may look to conduct "before the child's birth and both before and after the child has been removed by the Department." *Id.*; *see In re C.E.*, 687 S.W.3d at 310 (stating that (D) and (E) grounds "do not require that endangering 'conduct be directed at the child' or that the child 'actually suffer[] injury'" (quoting *In re J.W.*, 645 S.W.3d 726, 748 (Tex. 2022))). "Conduct that subjects a child to a life of uncertainty and instability endangers the child's physical and emotional well-being." *Pruitt*, 2010 WL 5463861, at *4.

The relevant inquiry under subsection E is whether evidence exists that the endangerment of the child's well-being "was the direct result of Appellant's conduct, including acts, omissions, or failures to act." *In re M.E.-M.N.*, 342 S.W.3d 254, 262 (Tex. App.—Fort Worth 2011, pet denied.); *see In re C.E.*, 687 S.W.3d at 310 (stating that paragraph E "requires that a parent's conduct endanger the child's physical or emotional well-being" but that "[p]roof that a parent specifically caused an injury is not necessary"). "Additionally, termination under subsection E must be based on more than a single act or omission; the statute requires a voluntary, deliberate, and conscious course of conduct by the parent." *In re M.E.-M.N.*, 342 S.W.3d at 262.

Matthew argues that there was no "clear and convincing evidence" that he endangered the children's physical or emotional well-being. In this case, Alyssa testified that Matthew used and sold drugs during their entire marriage; that Matthew had a felony criminal history; that he had engaged in physically violent behavior toward her; and that he was

13

emotionally abusive to the children. There was evidence that Matthew's drug use included using methamphetamine, cocaine, and heroin. *See In re J.O.A.*, 283 S.W.3d 336, 345-46 (Tex. 2009) (illegal narcotics use and its effect on an individual's ability to parent may constitute endangering course of conduct). Matthew's drug use led to his arrest in 2020 for possession of methamphetamine. Matthew pleaded guilty to the charge and, in June 2022, was placed on deferred adjudication community supervision for six years. There was evidence that, within four months of entering his plea of guilty to the felony drug charge, Matthew was arrested for assaulting a woman. The probable cause affidavit indicates that Matthew was using methamphetamine during this incident and that he was charged with assault causing bodily injury. Evidence of criminal conduct is relevant to a review of whether a parent engaged in a course of conduct that endangered the well-being of the child. *In re S.R.*, 452 S.W.3d 351, 360-61 (Tex. App.—Houston [14th Dist.] 2014, pet. denied). A parent's use of illegal drugs and the effect on his life and parenting ability may establish endangering conduct under subsection (E). *In re J.O.A.*, 283 S.W.3d 336, 346 (Tex. 2009); *In re K.A.C.*, 594 S.W.3d 364, 373 (Tex. App.—El Paso 2019, no pet.); *In re S.R.*, 452 S.W.3d 351, 360 (Tex. App.—Houston [14th Dist.] 2014, pet. denied). The Texas Supreme Court has confirmed that endangerment does not require a parent's drug use to directly harm the child. *In re R.R.A.*, 687 S.W.3d 269, 278 (Tex. 2024). "Instead, a pattern of parental behavior that presents a substantial risk of harm to the child permits a factfinder to reasonably find endangerment." *Id.* A parent's drug use can qualify as a voluntary, deliberate, and conscious course of conduct endangering the children's well-being. *See In re C.A.B.*, 289 S.W.3d 874, 885 (Tex. App.—Houston [14th Dist.] 2009, no pet.). Here, the trial court could reasonably infer that Matthew's drug use contributed to his absence from the family, his inability to provide financial support for the children, and the risk of his incarceration.

14

In addition, "[d]omestic violence, want of self-control, and propensity for violence may be considered as evidence of endangerment." *In re J.I.T.P.*, 99 SW.3d 841, 845 (Tex. App.—Houston [14th Dist.] 2003, no pet.). There was evidence at trial that Matthew was physically abusive to Alyssa, causing bruising on her face and body, and Alyssa testified that Matthew's physical abuse was not an isolated incident and only escalated when she sought help from law enforcement. Alyssa also testified that Matthew physically assaulted one of the children on at least one occasion. There was evidence that Matthew was often absent from the family home and did not financially or emotionally support the children. *See In re M.C.*, 917 S.W.2d 268, 270 (Tex. 1996) (neglect, even in absence of physical abuse, may endanger children's physical or emotional well-being).

Viewing the evidence under the applicable standard of review, we conclude that it was legally sufficient to support the endangerment finding against Matthew. *See* Tex. Fam. Code § 161.001(b)(1)(E); *In re A.C.*, 560 S.W.3d at 630-31. We overrule Matthew's challenge to the endangerment finding under subsection (E) and do not address his challenges to the findings of grounds for termination under subsections (C) and (F). *See In re N.G.*, 577 S.W.3d at 232-33.

**Best Interest**

Relevant factors in assessing the best interest of a child include: (i) the desires of the child, (ii) the stability of the home or proposed placement, (iii) parental abilities, (iv) the emotional and physical needs of the child now and in the future, (v) the emotional and physical danger to the child now and in the future, (vi) the plans for the child by the individual or agency seeking custody, (vii) the programs available to assist the individuals seeking custody to promote

the best interest of the child, (viii) acts or omissions by the parent showing that the parent-child relationship was not proper, and (ix) any excuses for the parent's conduct. *Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976); *see also* Tex. Fam. Code § 263.307 (stating that "prompt and permanent placement of the child in a safe environment is presumed to be in the child's best interest" and listing factors that court should consider "in determining whether the child's parents are willing and able to provide the child with a safe environment"). No one factor is controlling, evidence on each factor is not required, and evidence presented to satisfy the predicate-ground finding may also be probative of the child's best interest. *See In re C.H.*, 89 S.W.3d 17, 27 (Tex. 2002); *Pruitt*, 2010 WL 5463861, at *7.

The evidence at trial established that Alyssa had been primarily responsible for the care and support of the children and had received no financial support from Matthew before or during the children's lifetime. Alyssa testified that Matthew was frequently absent from the home and did not seem interested in interacting with the children. There was evidence that Matthew had a history of using illegal drugs; engaging in criminal conduct; and committing domestic violence against Alyssa, including during two of her pregnancies, and against one of the children. This conduct supports a finding that termination of Matthew's parental rights was in the children's best interest. *See In re C.H.*, 89 S.W.3d at 28 ("[F]ather failed to arrange medical care for [Mother] during her pregnancy with C.H.; he provided no emotional or financial assistance to C.H. after his birth; he had an extensive criminal history involving drugs and assaults which continued unabated after C.H.'s birth; and he had no concrete plan to provide emotional or physical care for C.H.").

A court may also consider whether a parent has a history of suicide attempts and mental instability, of which there was evidence in this case. *See In re E.C.R.*, 402 S.W.3d 239,

16

250 (Tex. 2013). Alyssa testified that Matthew had a history of mental health issues and frequently threatened to kill himself, and that she had to intervene in a past suicide attempt.

Matthew's inconsistent and infrequent interaction with the children supports an inference that he would not be able to meet the children's emotional and physical needs now or in the future. *See In re E.C.R.*, 638 S.W.3d 755, 768 (Tex. App.—Amarillo 2021, pet. denied) (inconsistent visitation with child indicated that parent would not meet child's emotional and physical needs). There was evidence that Matthew failed to visit the children for over a year and participated in very abbreviated holiday visits the Thanksgiving and Christmas before trial. Alyssa testified that the children were negatively affected by Matthew's frequent absences from the home, that the children do not desire to have a relationship with Matthew, and that the two older children felt a desire to protect the two younger children from Matthew's behavior. The trial court could reasonably have considered the evidence of Matthew's drug use, failure to support the family, emotional and physical abuse of Alyssa and the children, and mental health issues in determining that termination of his parental rights was in the children's best interest. *See Holley*, 544 S.W.2d at 371-72 (including parental abilities and danger to child now and in future among relevant factors in assessing child's best interest); *In re A.R.R.*, No. 01-18-00043-CV, 2018 WL 3233334, at *7 (Tex. App.—Houston [1st Dist.] July 3, 2018, pet. denied) (mem. op.) (parent's failure to adduce evidence of ability to care for children or of secure housing supported trial court's determination that parent was not capable of seeing to children's needs).

Viewing the evidence under the applicable standard of review, we conclude that the evidence was legally sufficient to support the trial court's best interest finding. *See* Tex. Fam. Code § 161.001(b)(2); *In re A.C.*, 560 S.W.3d at 630-31. We overrule Matthew's challenge to the best interest finding.

17

## CONCLUSION

Having overruled Matthew's challenges to the trial court's order terminating his parental rights to the four children, we affirm the termination order. Because there was no evidence of the value of the community estate presented at trial, we conclude that the trial court's division of the community estate was an abuse of discretion and, consequently, we reverse that portion of the trial court's order and remand the case to the trial court for further proceedings addressing the just and right division of the community estate.

_____

Chari L. Kelly, Justice

Before Chief Justice Byrne, Justices Kelly and Theofanis

Affirmed in Part; Reversed and Remanded in Part

Filed:   April 25, 2025

18